BC
RECEIVED R.M
1/27/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JJason Smith,<br><br>      PPlaintiff,<br><br>      v.<br><br>Office of the Chief Judge of Circuit Court of Cook County Cook County Juvenile Probation<br><br>      Defendant. | Case No.:<br><br>Judge:<br><br>JURY DEMAND REQUESTED |

<span style="color:red">1:25-cv-00909<br>Judge Jeffrey I. Cummings<br>Magistrate Judge Beth W. Jantz<br>RANDOM / Cat. 2</span>

## COMPLAINT

PPlaintiff Jason Smith ("Smith") states as follows as his complaint against

Defendant Office of the Chief Judge of the Circuit Court of Cook County and Cook

County Juvenile Probation (collectively "Defendant" or "Chief Judge")::

## SUMMARY

11. Defendant employed Mr. Smith as a probation officer for more than a decade in the Cook County Courthouse during which time he distinguished himself as an exemplary employee. During his employment, He served as a Steward, Vice President and President for AFSCME Local 3477, Council 31, who witnessed discriminatory treatment of African American and Latino Probation Officers from the Office of the Chief Judge and Cook County Juvenile Probation in their working conditions. He complained of racial discrimination from 2012 -2024 in the form of violation of probation officers' seniority, performance evaluations, discipline, harassment, arbitration hearings, procedures and other discriminatory treatment. Rather than abiding by the laws, the collective bargaining agreement and its own anti-discrimination policy, Defendant ignored the complaints,

permitted the violations to continue without so much as saying a word to the offenders, and pressured Mr. Smith to stay quiet.

2. In February 2023 – and after Defendant refused to take any action – Mr. Smith proceeded to arbitration and attempted to negotiate through his union his reinstatement to his position. The Chief Judge and his designee refused to listen to the information that a white probation officer committed the same offense further discriminating and retaliating against Mr. Smith. The Chief Judge and his designee refused to listen that they violated the steps in the collective bargaining agreement by not affording Mr. Smith a pre-disciplinary hearing prior to discharge similar to the white probation officer. The Chief Judge and his designee refused to listen that the discipline administered was harsher than the white probation officer. This resulted in a unfavorable decision for the plaintiff during a arbitration hearing.

3. Mr. Smith timely filed a charge of discrimination against Defendant and the Equal Employment Opportunity Commission issued his a right to sue letter on October 30, 2024. Ex. 1.

4. Mr. Smith brings this action to remedy Defendant's willful and intentional violation of Mr. Smith's statutory rights under the Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) et seq.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. Secs.1331 and 1343(4).

6. Venue is proper under 28 U.S.C. §1391 in the Northern District of Illinois because both Mr. Smith and the Office of the Chief Judge reside in this district and the events that gave rise to this claim occurred in this district.

3.

**FACTS**

**Background**

7.      Smith was employed by the Defendant in Cook County, Illinois. Mr. Smith was an exemplary employee: Plaintiff exceeded/and or met the expectations of his employer for fifteen years. See Ex. 2

8.      Defendant employed Smith as a probation officer from 2003 to 2018. At all times relevant to this Complaint, the Defendant assigned Smith to work at the Cook County Courthouse, 1100 S. Hamilton, Chicago Illinois.

9.      Defendant has adopted a written policy in the collective bargaining agreement Section 11. No Discrimination:

"No employee shall be discriminated against on the basis of race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status; political affiliation and/or beliefs, or activity or non-activity on behalf of the Union. Employees are required to comply with the Employer's policies on discrimination and harassment. Ex 3.

10.      The Defendant's policy, as well as federal law, required the Defendant to protect employees against discrimination inflicted by supervisors, employees and third parties.

11.      During the arbitration hearing, the arbitrator attempted to have the Chief Judge and his designee negotiate, the Chief Judge and his designee refused to listen to the information about the white probation officer, the provisions ignored in the collective bargaining agreement and the harsher treatment imposed on Mr. Smith.

3

**Pre and Post Arbitration hearing**

12. Smith attempted to resolve this issue with the Chief Judge and his designee by showing them the provision that states in the collective bargaining agreement that "Prior to the imposition of suspension or discharge the Department Head/Designee shall meet with the employee to discuss the circumstances giving rise to the contemplated discipline. The Employer, after presenting all known evidence and reasons for disciplinary action, will afford the employee an opportunity to rebut any evidence or charges against him/her." Notices: The Employer will notify the employee of the date of the Pre- Disciplinary meeting. No less than two (2) working days prior to the meeting date, the Employer will provide the employee and the Union with the date, time and location of the meeting, the reason(s) for the contemplated disciplinary action, and the names of relevant witnesses and copies of pertinent documents." Ex 3

13. These agreed upon provisions were ignored prior to the arbitration hearing, during the arbitration hearing and was not acknowledged by the Chief Judge or his designee.

14. The Defendant failed to negotiate in good faith when presented with the opportunity.

**Defendant Ignores Smith's Complaints**

15. Defendant was aware of these and other actions, or at minimum should have been aware, yet took no action.

16. Defendant was presented with the information about the white probation officer who committed the same offense, that the defendant circumvented the provisions in the collective bargaining agreement and violated the plaintiff's due process. The defendant still proceeded without negotiating in good faith with the plaintiff to be reinstated.

4

17. Defendant, however, did not follow through on its promises nor its obligations under the law or its own collective bargaining agreement.

18. This resulted in unfavorable decision returned in April 2023, by the arbitrator who failed to adhere to the provisions in the collective bargaining agreement. Further discriminating and retaliating against the plaintiff for his advocacy and his complaints of discrimination.

## COUNT I   DISCRIMINATION TITLE VII

133. Smith realleges and incorporates by reference Paragraphs 1-18 of his Complaint fully set forth herein.

34. Title VII of the Civil Rights Act of 1964, as amended, prohibits employment discrimination on the basis of race, among other protected characteristics. Specifically, the law states, it is an unlawful employment practice for an employer to fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment because of the individual's race, including discrimination by third parties and the creation of a hostile work environment. See 42 U.S.C. § 2000e, et seq.; Equal Employment Opp. Comm'n v. Costco Wholesale Corp., 903 F.3d 618, 624 (7th Cir. 2018).

35. Defendant was aware and/or should have been aware that a white probation officer was provided due process and an opportunity to negotiate her return to work. Defendant knew or should have known that these incidents were so pervasive and extreme that they affected and altered Smith's conditions of employment and yhe aforesaid conduct by defendant was willful and/or in reckless disregard of Smith's federally protected rights and warrants the imposition of punitive damages.

## COUNT II    RETALIATION UNDER TITLE VII

44.    Smith realleges and incorporates by reference Paragraphs 1-18 of his Complaint as if fully set forth herein.

45.    Smith engaged in a protected activity when he asserted his rights under Title VII of the Civil Rights Act of 1964 and opposed unlawful acts of discrimination and sexual harassment.

46.    Smith's termination was finalized by an arbitrator on April 2023. This unfavorable decision, and the defendant's actions during this arbitration hearing was in direct retaliation for having complained and protested about discrimination.

47.    The unlawful employment practices complained of above were intentional and done with malice or reckless indifference to the federally protected rights of Plaintiff, in violation of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a).

48.    Title VII of the Civil Rights Act of 1964, as amended, prohibits retaliation, including removal from one's job, for an employee's complaints about what they reasonably perceive as discrimination in the workplace.

49.    Defendant willfully and improperly denied Smith equal job terms and conditions because of his complaints and objections about discrimination at work.

50.    Defendant willfully and improperly refused to reinstate Mr. Smith back into his position in direct retaliation for his complaints and objections about discrimination at work.

51.    As a direct and proximate result of Defendant's unlawful employment practices and disregard for Smith's federally protected rights and dignity, as alleged above, Smith has lost and will continue to lose income, including but not limited to wages, raises, insurance, and other benefits.

52.     The aforesaid conduct by Defendant was willful and/or in reckless disregard of Smith's federally protected rights and warrants the imposition of punitive damages.

## JURY DEMAND

PPlaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, JJason Smith, prays that this Court grant the following relief against the Defendant:

A. Award Mr. Smith appropriate back pay, front pay and/or other damages for past and future pecuniary losses Smith has suffered as a result of Defendant's unlawful actions, in amounts to be determined at trial;

B. Award  Smith compensatory damages for pain, suffering and injury;

C. Award Smith punitive damages for Defendant's willful and wanton misconduct;

D. Award Mr. Smith liquidated damages for its willful and intentional misconduct, in amounts to be determined at trial;

E. Enter judgment in favor of Smith and against Defendant for all out of pocket expenses and incidental losses incurred by Smith as a result of Defendant's unlawful conduct;

F. Enter a declaratory judgment, pursuant to 28 USC § 2202 that Defendant's improper conduct constituted unlawful retaliation against Smith in violation of Title VII;

G.      Order Defendant to reinstate Plaintiff;

H.      Award Plaintiff her attorneys' fees, costs and expert fees incurred in this action; and

I.      Award Plaintiff all such additional or alternative relief that is appropriate under the circumstances of this case.

9

Dated: January 27, 20255

                    Respectfully submitted,

                    Jason Smith

                    By:   JJason Smith           

                         PPro Se

**Jason Smith**
3515 W. Cermak
Chicago, IL 60623
jason_smith54@yahoo.com

# EXHIBIT 1

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/30/2024

**To:** JASON SMITH
3515 W. Cermak
Chicago, IL 60623
Charge No: 440-2024-04486

EEOC Representative and email:   NIA MOORE
Investigator
nia.moore@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2024-04486.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
10/30/2024

Amrith Kaur Aakre
District Director

**Cc:**
Elena Demos
Office of the Chief Judge
69 West Washington Street Suite 3300
Chicago, IL 60602

Patrick Heery
Cook County
BHR-Labor Relations 118 N. Clark Street, Room 849
Chicago, IL 60602

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2024-04486 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2024-04486 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# EXHIBIT 2

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 SOUTH HAMILTON
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

TO:        JASON SMTH

FROM:      Michael J. Rohan
           William P. Siffermann
           Charles M. Young

DATE:      August 10, 2004

RE:        Calendar 2003 Performance

---

On behalf of the management staff of the entire department, we would like to extend our congratulations to you for your dedication and commitment to your coworkers, the Court, and the community. Based on the performance appraisal for calendar year 2003, you were found to "exceed standards" for your assigned responsibilities throughout the year. You are to be commended for your work which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your next paycheck. Thanks again for your continuous fine efforts on behalf of the department.

c:     Personnel File

MJR/WPS/CMY/dmo

000001

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

TO: **Jason Smith**
**Probation Officer**

FROM: **Michael J. Rohan**
**Charles M. Young**
**Thomas V. Morgan**

DATE: **September 22, 2006**

RE: **Calendar 2005 Work Performance Review**

---

On behalf of the staff of the entire department, we would like to extend our collective congratulations to you for your dedication and commitment to your coworkers, the Court, and the community. Based on the performance appraisal for calendar year 2005, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work during the past year which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continuous fine efforts on behalf of the department.

c: Personnel File

MJR/TVM/CMY/dmo

000002

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

TO:          Jason Smith
             Probation Officer

FROM:        Michael J. Rohan
             Charles M. Young
             Thomas V. Morgan

DATE:        September 21, 2007

RE:          Calendar 2006 Work Performance Review

---

On behalf of the staff of the entire department, we would like to extend our collective congratulations to you for your dedication and commitment to your coworkers, the Court, and the community. Based on the performance appraisal for calendar year 2006, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work during the past year which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continuous fine efforts on behalf of the department.

c:       Personnel File

MJR/TVM/CMY/dmo

000003

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young

Date:   October 2, 2008

Re:     2007 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your exceptional work performance for calendar year 2007. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your most personal and professional approach to your work throughout the year. For this past year, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

c: Personnel File

000004

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

**TIMOTHY C. EVANS**
CHIEF JUDGE

**MICHAEL J. ROHAN**
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:   September 24, 2009

Re:     2008 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your exceptional work performance for calendar year 2008. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your most personal and professional approach to your work throughout the year. For this past year, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/dmo

c: Personnel File

000005

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To: Jason Smith
Probation Officer

From: Michael J. Rohan
Charles M. Young
Rose M. Golden

Date: May 24, 2010

Re: 2009 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your strong and consistent work performance for calendar year 2009. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your personal and professional approach to your work. A review of your performance appraisal reflects that you were found to "exceed standards" for your assigned responsibilities. Please accept our commendation for your work and your commitment to excellence.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/tg

c: Personnel File

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:   July 22, 2011

Re:     2010 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your strong and consistent work performance for calendar year 2010. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your personal and professional approach to your work. A review of your performance appraisal reflects that you were found to "exceed standards" for your assigned responsibilities. Please accept our commendation for your work and your commitment to excellence.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/tg

c: Personnel File

000007

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:   June 8, 2012

Re:     2011 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your strong and consistent work performance for the past year 2011. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your personal and professional approach to your work. A review of your performance appraisal reflects that you were found to "exceed standards" for your assigned responsibilities. Please accept our commendation for your work and commitment to excellence.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/tg

c:  Personnel File

000008

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY

### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

**TIMOTHY C. EVANS**
CHIEF JUDGE

**MICHAEL J. ROHAN**
DIRECTOR
PROBATION AND COURT SERVICES



**1100 S. Hamilton Avenue**
**2nd Floor**
**Chicago, Illinois 60612**
**(312) 433-6569**
**(312) 433-7388 Fax**

To:        Jason Smith
Chicago West Division

From:     Michael J. Rohan
Charles M. Young
Rose Marie Golden
William Patterson

Date:     June 3, 2013

Re:      2012 Performance Appraisal – Merit Pay

We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2012 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

kms

000009

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:     James Smith

From:   Michael J. Rohan
        Charles M. Young
        Rose Marie Golden
        William Patterson

Date:   May 23, 2014

Re:     2013 Performance Appraisal – Merit Pay


We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2013 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus will be included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

kms

000010

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

**TIMOTHY C. EVANS**
CHIEF JUDGE

**MICHAEL J. ROHAN**
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:     Jason Smith

From:   Michael J. Rohan
        Charles M. Young
        Rose Marie Golden
        William Patterson

Date:   May 23, 2014

Re:     2013 Performance Appraisal – Merit Pay

We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2013 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus will be included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

kms

000011

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

**TIMOTHY C. EVANS**
CHIEF JUDGE

**AVIK DAS**
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



**1100 S. HAMILTON AVENUE**
**2ND FLOOR**
**CHICAGO, ILLINOIS 60612**
**(312) 433-6575**
**(312) 433-7388 FAX**

To:     Jason Smith
        Probation Officer

From:   Avik Das
        Acting Director

Date:   July 31, 2015

Re:     2014 Performance Appraisal – Merit Pay

We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2014 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

elm

000012

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

**TIMOTHY C. EVANS**
CHIEF JUDGE

**AVIK DAS**
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



**1100 S. HAMILTON AVENUE**
**2ND FLOOR**
**CHICAGO, ILLINOIS 60612**
**(312) 433-6575**
**(312) 433-7388 FAX**

To          Jason Smith
            Probation Officer

From:       Avik Das
            Acting Director

Date:       June 28, 2016

Re:         2015 Performance Appraisal – Merit Pay


We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2015 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

ew

000013

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

**TIMOTHY C. EVANS**
CHIEF JUDGE

**AVIK DAS**
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



**1100 S. HAMILTON AVENUE**
**2ND FLOOR**
**CHICAGO, ILLINOIS 60612**
**(312) 433-6575**
**(312) 433-7388 FAX**

June 13, 2017

TO:     Jason Smith
        Probation Officer
        Chicago West Division

FR:     Avik Das
        Acting Director

RE:     2016 Performance Appraisal – Merit Pay

      We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2016 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

      Congratulations and thank you for your continued commitment and dedication.

CC:     Personnel File

000014

# EXHIBIT 3

Return Date: No return date scheduled
Hearing Date: 7/22/2019 9:30 AM - 9:30 AM
Courtroom Number: 2502
Location: District 1 Court
        Cook County, IL

Case: 1:25-cv-00909 Document #: 1 Filed: 01/27/25 Page 30 of 96 PageID #:30

FILED
3/22/2019 9:57 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03742

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## AFSCME COUNCIL 31, LOCAL 3477

## REPRESENTING THE JUVENILE PROBATION OFFICERS

## AND

## THE CHIEF JUDGE OF THE

## CIRCUIT COURT OF COOK COUNTY

Effective:
December 1, 2012 through November 30, 2017

1



FILED DATE: 3/22/2019 9:57 AM   2019CH03742

TABLE OF CONTENTS

Page

ARTICLE I RECOGNITION ........................................................................................................ 1
    Section 1.    Representative Unit ........................................................................ 1
    Section 2.    Union Membership ........................................................................ 1
    Section 3.    Dues Checkoff ............................................................................... 1
    Section 4.    "Fair Share" ................................................................................... 2
    Section 5.    Religious Exemption .................................................................... 3
    Section 6.    Indemnification ............................................................................ 3

ARTICLE II LABOR MANAGEMENT COMMITTEE .......................................................... 3
    Section 1.    Labor Management Committee .................................................. 3

ARTICLE III EMPLOYER AUTHORITY .................................................................................. 3
    Section 1.    Employer Rights ............................................................................ 3
    Section 2.    Employer Obligation .................................................................... 4
    Section 3.    Employee Obligation ................................................................... 4

ARTICLE IV HOURS OF WORK ............................................................................................ 4
    Section 1.    Regular Work Periods .................................................................. 4
    Section 2.    Flextime ......................................................................................... 5
    Section 3.    Chief Judge - Constitutional Authority ...................................... 5
    Section 4.    Compensatory Time ..................................................................... 5
    Section 5.    Miscellaneous ............................................................................... 5
    Section 6.    Off-Peak Shifts .............................................................................. 6

ARTICLE V SENIORITY ............................................................................................................ 6
    Section 1.    Probationary Period ..................................................................... 6
    Section 2.    Definition of Seniority ................................................................. 6
    Section 3.    Reduction in Work Force, Layoff and Recall ............................. 6
    Section 4.    Termination of Seniority .............................................................. 7
    Section 5.    Transfer of Stewards ................................................................... 7
    Section 6.    Seniority List ................................................................................. 7

ARTICLE VI HOLIDAYS ........................................................................................................... 8
    Section 1.    Designation of Holidays .............................................................. 8
    Section 2.    Holidays in Vacations .................................................................. 8
    Section 3.    Work on a Holiday ....................................................................... 8
    Section 4.    Floating Holiday ........................................................................... 9

ARTICLE VII VACATIONS ...................................................................................................... 9
    Section 1.    Vacation Leave ............................................................................. 9
    Section 2.    Vacation Preference and Scheduling ...................................... 10

ARTICLE VIII SICK LEAVE .................................................................................................... 11
    Section 1.    Sick Leave .................................................................................... 11
    Section 2.    Disability Benefits ...................................................................... 11

ARTICLE IX PENSION PLAN ............................................................................................... 12
    Section 1.    Pension Plan ............................................................................... 12

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

ARTICLE X INSURANCE...........................................................................................12
   Section 1.   Health Insurance..................................................................12
   Section 2.   Life Insurance ....................................................................12
   Section 3.   Dental Plan.........................................................................13
   Section 4.   Vision Plan..........................................................................13
   Section 5.   Hospitalization - New Hires ................................................13
   Section 6.   Insurance Coverage for Laid Off Employees ......................13
   Section 7.   Insurance Opt-Out ..............................................................13
   Section 8.   Domestic Partner Coverage .................................................13
   Section 9.   Benefit Eligibility................................................................13
   Section 10.   Generic Step Therapy and Mandatory Maintenance ...........14

ARTICLE XI ADDITIONAL BENEFITS.......................................................................14
   Section 1.   Bereavement Leave ............................................................14
   Section 3.   Personal Days.....................................................................15
   Section 4.   Jury Duty............................................................................16

ARTICLE XII LEAVES OF ABSENCE .......................................................................16
   Section 1.   Regular Leave ....................................................................16
   Section 2.   Seniority on Leave ..............................................................16
   Section 3.   Retention of Benefits..........................................................16
   Section 4.   Union Leave.......................................................................17
   Section 5.   Military Leave.....................................................................17
   Section 6.   Veteran's Conventions.........................................................17
   Section 7.   Family Responsibility Leave.................................................18
   Section 8.   Educational Leave ...............................................................18
   Section 9.   Use of Benefit Time ............................................................18
   Section 10.   Approval of Leave...............................................................18

ARTICLE XIII GRIEVANCE PROCEDURE...................................................................19
   Section 1.   Policy .................................................................................19
   Section 2.   Definition ...........................................................................19
   Section 3.   Representation ....................................................................19
   Section 4.   Meetings ............................................................................19
   Section 5.   Grievance Procedure Steps .................................................20
   Section 6.   Time Limits........................................................................20
   Section 7.   Stewards ............................................................................20
   Section 8.   Union Representative ..........................................................21
   Section 9.   Impartial Arbitration............................................................21
   Section 10.   Arbitration Panel ................................................................21
   Section 11.   Advance Step Filing............................................................22
   Section 12.   Expedited Arbitration .........................................................22

ARTICLE XIV CONTINUITY OF OPERATION ............................................................23
   Section 1.   No Strike ............................................................................23
   Section 2.   Union Responsibility...........................................................23
   Section 3.   Discharge of Violators .........................................................23
   Section 4.   No Lock-Out .......................................................................23
   Section 5.   Reservation of Rights ..........................................................23
   Section 6.   Bargaining Unit Work..........................................................24

ARTICLE XV SAVINGS CLAUSE ............................................................................................24
    Section 1.    General Provision ......................................................................................24
    Section 2.    Conduct of Lawsuit ...................................................................................24
    Section 3.    Judicial Powers .........................................................................................24

ARTICLE XVI SUBCONTRACTING .......................................................................................25
    Section 1.    Subcontracting .........................................................................................25

ARTICLE XVII PROFESSIONAL MEETINGS ..........................................................................25
    Section 1.    Courses and Conferences ........................................................................25
    Section 2.    Organization Meetings and Committee Service.......................................25

ARTICLE XVIII FILLING OF VACANCIES ...............................................................................26
    Section 1.    Posting ......................................................................................................26
    Section 2.    Priority .....................................................................................................27

ARTICLE XIX DISCIPLINARY PROCEDURE ...........................................................................28
    Section 1.    Use of Discipline ......................................................................................28
    Section 2.    Types of Discipline ...................................................................................28
    Section 3.    Investigatory Meeting .............................................................................29
    Section 4.    Pre-Disciplinary Meeting .........................................................................29
    Section 5.    Verbal and Written Reprimands ..............................................................29
    Section 6.    Notification of Disciplinary Action ..........................................................29
    Section 7.    Removal of Discipline ..............................................................................30
    Section 8.    Temporary Suspension............................................................................30

ARTICLE XX MISCELLANEOUS ...........................................................................................31
    Section 1.    Transportation.........................................................................................31
    Section 2.    Meeting Rooms .......................................................................................31
    Section 3.    Personnel Files.........................................................................................31
    Section 4.    Payroll Deductions...................................................................................31
    Section 5.    Dual Employment ....................................................................................31
    Section 6.    Performance Evaluations .........................................................................31
    Section 7.    Personnel Manual....................................................................................32
    Section 8.    Bulletin Boards ........................................................................................32
    Section 9.    No Discrimination ....................................................................................33
    Section 10.    Americans with Disabilities Act ..............................................................33
    Section 11.    Travel Reimbursement............................................................................33
    Section 12.    Auto Insurance .......................................................................................33
    Section 13.    Direct Deposit .........................................................................................33
    Section 14.    Day Care..................................................................................................34
    Section 15.    Tax Shelters.............................................................................................34
    Section 16.    Part Time Employment ...........................................................................34
    Section 17.    Quality Standard Committee...................................................................34
    Section 18.    Personal Support Program (PSP) .............................................................34
    Section 19.    Employee Development and Training.......................................................35
    Section 20.    School Conference and Activity Leave .....................................................35
    Section 21.    Mass Transit Benefit Program .................................................................35
    Section 22.    Personnel Rule Changes...........................................................................35
    Section 23.    Printing of Contracts ...............................................................................35

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

ARTICLE XXI HEALTH AND SAFETY ................................................................35
   Section 1.   General ................................................................35
   Section 2.   Health and Safety Committee ..................................36
   Section 3.   Video Display Terminals ..........................................36
   Section 4.   Communicable Diseases..........................................36

ARTICLE XXII UPWARD MOBILITY PROGRAM ..............................................37
   Section 1.   Goals and Priorities.................................................37

ARTICLE XXIII JOB CLASSIFICATIONS ...........................................................37
   Section 1.   Classification Review Committee/Job Audits ..........37

ARTICLE XXIV EDUCATIONAL BENEFITS ......................................................38
   Section 1.   Educational Fund ....................................................38

ARTICLE XXV UNION RIGHTS .......................................................................38
   Section 1.   Information Provided to Union.................................38

ARTICLE XXVI RATES OF PAY .......................................................................38
   Section 1.   Salary Raises...........................................................38
   Section 2.   Classification Change .............................................39
   Section 3.   Equipment Allowance ............................................39
   Section 4.   Longevity Plan - Probation Services .......................39
   Section 5.   Bilingual Pay...........................................................39
   Section 6.   Merit Bonus............................................................39

ARTICLE XXVII DURATION..............................................................................40
   Section 1.   Term .......................................................................40

SIDELETTERS AND MEMORANDUMS OF UNDERSTANDING ......................41

APPENDIX A ...................................................................................................43
   JOB CLASSIFICATIONS.................................................................43

APPENDIX B ...................................................................................................44
   PAY SCHEDULES ..........................................................................44

APPENDIX C ...................................................................................................45
   INSURANCE..................................................................................45

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

## PREAMBLE

This collective bargaining agreement is entered into between the Chief Judge of Cook County as the Employer of employees covered by this Agreement (hereinafter collectively referred to as the "Employer") and the American Federation of State, County, and Municipal Employees (AFSCME) Council 31. AFL-CIO for and on behalf of Local 3477, (hereinafter referred to as the "Union").

## ARTICLE I
## RECOGNITION

**Section 1.**    **Representative Unit:**

The Employer recognizes the Union as the sole and exclusive representative for all employees of the Employer in the job classification set forth in Appendix A of this Agreement and excluding all confidential employees, supervisors and managers.

**Section 2.**    **Union Membership:**

The Employer does not object to Union membership by its employees, and believes that certain benefits may inure from such membership. For the purpose of this Section, an employee shall be considered to be a member of the Union if he/she timely tenders the dues and initiation fee required as a condition of membership.

The Employer will grant the Union an opportunity during the orientation of new employees to present the benefits of Union membership, at which time the Union may give such employees a copy of this Agreement.

**Section 3.**    **Dues Checkoff:**

A.    Deductions: The Employer agrees to deduct from the pay of those employees who individually sign a written authorization the following:

      1.    Union membership dues, initiation fee required as a condition of membership, or a representation fee.
      2.    Union sponsored dental plan.
      3.    P.E.O.P.L.E. deduction.

The request shall be on a form agreed to by the parties. The amounts deducted shall be set by the Union.

The Union shall advise the Employer of any increase in dues, fair share fees, or other approved deductions in writing at least forty-five (45) days prior to its effective date. The Employer shall implement the increase in the first full pay period on or after the effective date.

B.    Remittance: The deductions (including fair share deductions) shall be remitted to the Union along with a list of all employees covered by the Agreement, each bargaining unit employee's salary, and the amount deducted from each employee.

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

**Section 4.** "Fair Share":

A. The County agrees to grant "Fair Share" to the Union in accordance with Sections 6(e) - (g) of the Illinois Public Labor Relations Act during the term of this Agreement. All employees covered by this Agreement will within 30 days of the Union meeting said condition or within 30 days of their employment by the Chief Judge either (1) become members of the Union and pay to the Union regular Union dues and fees or (2) will pay to the Union each month their fair share of the Union's costs of the collective bargaining process, contract administration and pursuing matters affecting employee wages, hours, and other conditions of employment.

B. Such fair share payment by nonmembers shall be deducted by the Employer from the earnings of the nonmember employees and remitted to the Union, provided, however, that the Union shall certify to the Employer the amount constituting said fair share, not exceeding the dues uniformly required of members of the Union, and shall certify that said amount constitutes the nonmembers' proportionate share of the Union's costs of the collective bargaining process, contract administration and pursuing matter affecting employee wages, hours and other conditions of employment.

C. Upon receipt of such certification, the Employer shall cooperate with the Union to ascertain the names and addresses of all employee nonmembers of the Union from whose earnings the fair share payments shall be deducted and their work locations.

D. Thirty days prior to any fair share deductions being made, the Union shall post a notice at all offices where nonmembers are employed providing the following information:

1. When fair share deductions will begin;
2. The percentage of dues which will be deducted as the fair share;
3. An explanation of how the percentage of fair share dues was calculated;
4. A statement as to how a nonmember may obtain further information about how the fair share percentage was calculated;
5. An explanation that objections to the fair share amount may be filed by contacting the Illinois State Labor Relations Board at 111 North Canal Street, Suite 940, Chicago, Illinois 60601, telephone number 793-6400.

E. Objections to the amount of fair share deductions shall be resolved by the Illinois State Labor Relations Board according to its rules and regulations. Should the State Labor Relations Board be unable to provide a timely hearing, objections shall be heard by a neutral arbitrator jointly selected by the objectors and the Union. The arbitrator's fees and expenses shall be paid by the Union.

F. Upon the Union's receipt of notice of an objection by a non-member to the fair share amount, the Union shall deposit in an escrow account, separate from all other Union funds, said non-member's funds in accordance with applicable law and will provide notice and appeal procedures to employees in accordance with applicable law.

G. If an ultimate decision in any proceeding under State or Federal law directs that the amount of the fair share should be different than the amount fixed by the Union, the Union

-2-

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

shall promptly adopt said determination and notify the Employer to change deductions from the earnings of nonmembers to said prescribed amount.

H.      It is understood that if the Union procedure for handling fair share objectors has been subjected to review by the Illinois State Labor Relations Board and found valid under Federal and State law, that procedure shall be followed by objection employees.

### Section 5.     Religious Exemption:

Employees who are members of a church or religious body having a bona fide religious tenet or teaching which prohibits the payment of a fair share contribution to a union shall be required to pay an amount equal to their fair share of Union dues, as described in Section 4, to a non-religious charitable organization mutually agreed upon by the Union and the affected employees as set forth in Section 6(g) of the Illinois Public Labor Relations Act. The employee will be required to furnish written receipt to the Union on a quarterly basis verifying that such payment has been made.

### Section 6.     Indemnification:

The Union shall indemnify and save the Employer harmless against any and all claims, demands, suits or other forms of liability that may arise out of or by reason of any action taken by the Employer for the purpose of complying with any provisions of this Agreement. If an incorrect deduction is made, the Union shall refund any such amount directly to the involved employee.

## ARTICLE II
## LABOR MANAGEMENT COMMITTEE

### Section 1.     Labor Management Committee:

For the purpose of conferring on matters of mutual interest which are not appropriate for consideration under the grievance procedure, the Union and Employer agree to meet quarterly through designated representatives at the request of either party and at mutually agreed upon times and locations. The Union and Employer shall each designate not more than five (5) representatives to a labor-management committee for this purpose.

## ARTICLE III
## EMPLOYER AUTHORITY

### Section 1.     Employer Rights:

The Union recognizes that the Employer has the full authority and responsibility for directing its operations and determining policy. The Employer reserves unto itself all powers, rights, authority, duties and responsibilities conferred upon it and vested in it by the statutes of the State of Illinois, and to adopt and apply all rules, regulations and policies as it may deem necessary to carry out its statutory responsibilities including: (a) to manage its affairs efficiently and economically, including the determination of quantity and quality of services to be rendered, the control of materials, equipment to be used, and the discontinuance of any services, methods,

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

or processes, change or eliminated existing equipment, and institute technological changes and where practicable to train existing employees of new equipment; and to decide on materials, supplies and equipment to be purchased; (b) to determine the number, location and type of facilities and installations; (c) to determine the size of the work force and increase or decrease its size; (d) to hire, assign and lay off employees, to reduce the work week or the work day; (e) to direct the work force, assign work and determine the number of employees assigned to operations; (f) to establish, change, combine or discontinue job classification, and to establish wage rates for any new or changed classifications; (g) to establish and/or revise performance standards or norms; (h) to determine lunch and rest period, and starting and quitting time and the number of hours to be worked; (i) to establish work schedules; (j) to adopt, revise and enforce work rules and general requirements and to carry out cost and general improvement programs; (k) to transfer, promote and demote employees from one classification or department to another; (l) to select employees for promotion or transfer to other positions, and to determine the qualifications and competency of employees to perform available work; except as amended, changed or modified by this agreement and provided that the Employer recognizes its obligation to negotiate with the Union over changes in the conditions of employment pursuant to the Illinois Public Labor Relations Act.

**Section 2.**   **Employer Obligation:**

The Union recognizes that this Agreement does not empower the Employer to do anything that it is prohibited from doing by law.

**Section 3.**   **Employee Obligation:**

Employees shall conduct themselves in accordance with the Rules of Professional Conduct and/or Code of Conduct referenced in the Employer's policy and procedure manual, which are established to promote the integrity of the probation department and the judiciary.

## ARTICLE IV
## HOURS OF WORK

**Section 1.**   **Regular Work Periods:**

The regular work day for a full time employee shall be eight (8) hours each day, including an hour lunch which is not to be considered a working hour. Except in specialized units, the work week shall generally run Monday through Friday. The hours of work shall be as follows:

A.   Work hours in Home Confinement, Evening Reporting Centers, IPS, and Detention Screening will be established consistent with the operational needs of the Department.

B.   Other officers shall work one of the following shifts:

8:30 a.m. - 4:30 p.m.
9:00 a.m. - 5:00 p.m.

Officers shall inform their supervisors of their preference. The supervisors will approve

schedules based on operational needs.

## Section 2.  Flextime:

Requests by employees for flextime schedules shall be granted where practicable to do so. The scheduling of flextime shall be by mutual arrangement between the employee and his/her supervisor.

## Section 3.  Chief Judge - Constitutional Authority:

This Agreement recognizes that the Chief Judge is empowered by the Constitution of the State of Illinois to set times and places of holding court and to order extended court hours when necessary. It is understood that employees will comply with any such order.

## Section 4.  Compensatory Time:

A.   Compensatory time will be granted to employees at the rate of one hour of compensatory time earned for every hour of overtime worked between 35 and 40 hours. Compensatory time will be granted to employees at the rate of one and one-half hours compensatory time earned for every hour of overtime work over 40 hours in a work week. Employees required to work on holidays and/or weekends will receive one and one-half hours compensatory time for every hour worked on the holiday or weekend for employees who are on scheduled time off.

B.   Utilization: Employees are entitled to combine use of any accrued benefit time except for sick leave. Employees are entitled to use accrued compensatory days consecutively.

## Section 5.  Miscellaneous:

Employees shall be eligible for two hours benefit time each quarter to arrive late or leave early to accommodate unforeseen events. This benefit time may be used in single hour increments for late arrival or in a two hour increment for early dismissal. Employees arriving late pursuant to this policy shall inform their supervisor no later than 15 minutes after the beginning of their regular shift whenever possible. Employees leaving early pursuant to this policy shall obtain prior approval from their supervisor. Such approval shall not be unreasonably denied. Benefit time not used within the quarter shall not carry forward to subsequent quarters. Separation from employment shall terminate all rights to this time.

Employees who are late and have exhausted their benefit time, will not be subject to discipline for tardiness if they have a good cause reason for being tardy. However, such employees will be required to make up time equal to the amount of time they are late. Such time shall be made up at a time mutually agreeable to the supervisor and the employee, but must be made up no later than ten (10) working days after the occurrence.

Employees who do not have a good cause reason for being tardy and who have exhausted their benefit time may be subject to discipline in accordance with the Disciplinary Article.

It is agreed between the Employer and the Union that benefit time is to be used for

-5-

unforeseen events. Generally, unforeseen events include demands on an employee's time, of a personal nature, that cannot be anticipated by the employee. Examples of unforeseen events include but are not limited to car trouble, emergency physician, dental, and vision appointments, or emergency child care/family issues. The Union recognizes that benefit time is to be granted to the employee at the discretion of the supervisor and that benefit time would not consistently be used by an employee each quarter unless approved by the supervisor. All requests for benefit time, including the reason(s), will be submitted to the supervisor in writing.

### Section 6.    Off-Peak Shifts:

Employees scheduled to work regularly scheduled off-peak shifts that start on or after 2:00 p.m. and prior to 6:00 a.m., shall be compensated an additional one dollar ($1.00) per hour above the employees' regular hourly rate, provided further that those employees who discontinue these work assignments for any reason shall also relinquish their entitlement to this additional compensation.

## ARTICLE V
## SENIORITY

### Section 1.    Probationary Period:

The probationary period for a new employee, or an employee hired after a break in continuous service, shall be six (6) months after the completion of initial training. A probationary employee shall have no seniority and may be terminated at any time during the probationary period for any lawful reason and shall have no recall rights or recourse to the grievance procedure with respect to any such discipline or discharge. Upon completion of the probationary period, the employee's seniority shall be computed as of the date of his/her most recent hire.

### Section 2.    Definition of Seniority:

For purposes of this Article, seniority is defined as an employee's length of most recent continuous employment with the Employer since his/her last hiring date as a full-time employee, less any time off for a period exceeding 30 days.

### Section 3.    Reduction in Work Force, Layoff and Recall:

Should the Employer determine that it is necessary to decrease the number of Probation Officers, the employees to be laid off shall be removed from the workforce in inverse order of seniority with the Juvenile Probation and Court Services. Employees shall be recalled in order of seniority with the Juvenile Probation and Court Services.

The Union and the affected employees shall be provided with at least thirty (30) calendar days' notice prior to the effective date of the layoff.

For the purposes of layoff, ties in seniority shall be broken by using the employee's Cook County I.D. number.

-6-

FILED DATE: 3/22/2019 9:57 AM  2019CH03742

**Section 4.**     Termination of Seniority:

     A.     An employee's seniority and employment relationship with the Employer shall terminate upon the occurrence of one of the following:

         1.     Resignation or retirement;
         2.     Discharge for just cause.

     B.     Termination is immediate and implied upon the occurrence of one of the following:

         1.     Absence for three (3) consecutive work days without notification to the department head or a designee during such period of the reason for the absence, unless the employee has an explanation acceptable to the Employer for not furnishing such notification;

         2.     Failure to report to work at the termination of leave of absence or vacation, unless the employee has an explanation acceptable to the Employer for such failure to report for work;

         3.     Absence from work because of layoff or any other reason for twenty-four (24) months for any employee with less than seven years of service or for thirty-six (36) months for any employee with seven or more years of service except that this provision shall not apply in the case of an employee on an approved leave of absence, or absent from work because of illness or injury covered by duty disability or ordinary disability benefits;

         4.     Failure to report for work upon recall from layoff within ten (10) work days after notice to report for work is sent by registered or certified mail or by telegram, to the employee's last address on file with the Personnel Department of the Employer;

         5.     Engaging in gainful employment while on an authorized leave of absence, with the exception that an employee on an authorized educational leave of absence shall be allowed to have a paid internship related to his/her educational requirements. This shall also apply to previously approved secondary employment.

**Section 5.**     Transfer of Stewards:

     Employees acting as Union Stewards shall not be transferred from their job classification or departments because of their activities on behalf of the Union. Any transfers of Union Stewards from their job classifications or departments, other than in an emergency, will be accomplished upon notification to the Union in advance of any such transfers.

**Section 6.**     Seniority List:

     The Employer will furnish the Union a list showing the name, number, address, classification and last hiring date of each employee and whether the employee is entitled to seniority or not. The Employer shall furnish a similar list without employee addresses that the Union may post. Within thirty (30) calendar days after the date of posting, an employee must notify the Employer of any error in his/her last hiring date as it appears on that list or it

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

will be considered correct and binding on the employee and the Union for that period of time. The Employer will furnish the Union monthly reports of any changes to such list, and shall furnish a revised list on December 1st of each year. The seniority list shall be posted in such reasonable locations as mutually agreed upon between the Employer and the Union.

## ARTICLE VI
## HOLIDAYS

**Section 1.**    **Designation of Holidays:**

A.    The following days are hereby declared holidays, except in emergency and for necessary operations, for all employees in the bargaining unit.

1.    New Year's Day - January 1st
2.    Martin Luther King's Birthday - third Monday in January
3.    Lincoln's Birthday - February 12th
4.    President's Day - third Monday in February
5.    Pulaski Day - first Monday in March
6.    Memorial Day - last Monday in May
7.    Independence Day - July 4th
8.    Labor Day - first Monday in September
9.    Columbus Day - second Monday in October
10.    Veteran's Day - November 11th
11.    Thanksgiving Day - The day approved by the Governor of the State of Illinois or by the President of the United States
12.    Christmas Day - December 25th

It is the intent of the Employer that all salaried employees be granted twelve (12) holidays, or equivalent paid days off per year. Should a certain holiday fall on Saturday, the preceding Friday shall be set as the holiday; should a certain holiday fall on a Sunday, the following Monday shall be set as the holiday.

B.    In addition to the above, any other day or part of a day shall be considered a holiday when so designated by the Employer.

**Section 2.**    **Holidays in Vacations:**

If a holiday falls within an employee's scheduled vacation, such employee, if otherwise eligible, shall receive the holiday leave and will not be required to use accrued vacation leave for that holiday.

**Section 3.**    **Work on a Holiday:**

Assignments to work on a holiday shall first be rotated on a volunteer basis and then be rotated equally among all members of the bargaining unit who would normally be assigned to such work.

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

Section 4.    Floating Holiday:

In addition to the holidays listed, an employee shall be credited with one (1) floating holiday on December 1 of each year which must be used by the employee between December 1 and November 30. The floating holiday may not be carried over into the next fiscal year by the employee except as provided below. The floating holiday will be scheduled in accordance with the procedures for vacation selection except for the Circuit Court Clerk which shall be in accordance with their current practice for compensatory time or accrued time. Use of the floating holiday is restricted to a full day increment. Requests shall not be unreasonably denied. If the floating holiday is not used prior to the end of the fiscal year (November 30th), the employee shall be compensated in cash (at the applicable rate) or compensatory time, in accordance with current practice, provided that the employee has submitted at least three (3) requests for such floating holiday by September 1 and the employer failed to grant one of the three days requested.

If an employee is required to work on an approved floating holiday, the employee shall receive the employee's regular hourly rate for the hours actually worked plus one and one-half times the hours actually worked in compensatory time. The usage of such time shall be in accordance with current practice of the Employer in effect on the date of this Agreement.

## ARTICLE VII
## VACATIONS

Section 1.    Vacation Leave:

A.    All bargaining unit employees, who have completed one year of service with Employer, including service mentioned in Paragraph E of this Section, shall be granted vacation leave with pay for periods as follows:

| Anniversary of Employment | Days of Vacation | Maximum Accumulation |
|---|---|---|
| 1st thru 6th | 10 working days | 20 working days |
| 7th thru 14th | 15 working days | 30 working days |
| 15th thru --- | 20 working days | 40 working days |

B.    Computation of vacation leave shall begin at the initial rate of employment at 0.3847 days per pay period, with the rate of accrual increasing thereafter on the sixth (6th) anniversary to 0.5770 days per pay period and on the fourteenth (14th) anniversary to 0.7693 days per pay period. Employees must be in a pay status for a minimum, of five (5) days in a bi-weekly pay period to accrue time in that period.

C.    All individuals employed on a part-time work schedule of twenty (20) hours per week or more shall be granted vacation leave with pay proportionate to the time worked per month.

D.    Employees may use only such vacation leave as has been earned and accrued.

-9-

E.       Any employee covered by this Agreement who has rendered continuous service to the City of Chicago, the Chicago Park District, the Forest Preserve District, the Metropolitan Sanitary District of Greater Chicago and/or the Chicago Board of Education shall have the right to have the period of such service credited and counted for the purpose of computing the number of years of service as employees of the Circuit Court for vacation credit only. All discharges and resignations not followed by reinstatement within one (1) year shall interrupt continuous service, and shall result in the loss of all prior service credit. Credit for such prior service shall be established by filing, in the Office of the Comptroller of Cook County, a certificate of such prior service from such former place or places of employment.

F.       In the event an employee has not taken vacation leave as provided by reason of separation from service, the employee, or in the event of death, the employee's spouse or estate, shall be entitled to receive the employee's prevailing salary for such unused vacation periods.

G.       In computing years of service for vacation leave, employees shall be credited with regular working time plus the time of duty disability.

H.       Any employee covered by this Agreement who is a reemployed veteran shall be entitled to be credited with working time for each of the years absent due to Military service. The veteran's years of service for purposes of accrual of vacation time in the year of return to employment with the Circuit Court, shall be the same as if employment had continued without interruption by Military service.

I.       Holidays recognized by the Employer are not to be counted as part of vacation.

## Section 2.       Vacation Preference and Scheduling:

A.       Subject to operational needs, vacation will be granted among employees on a first requested - first granted basis. Where two or more employees in the same department performing the same job request vacation on the same day for the same calendar period and all the employees cannot be released at the same time, then the vacation requests shall be granted in order of the employee's seniority.

B.       Requests for vacation time shall be made in the following manner:

| Amount of Vacation Leave | Request Period |
| --- | --- |
| 1 day or less | 1 day |
| 2 to 5 days | 3 days |
| more than 5 days | 7 days |

It is understood that circumstances may arise in which an employee is unable to meet the request time requirement. In these situations, employees may be allowed the use of vacation days in the employer's sole discretion. Such approval will not be unreasonably withheld.

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

## ARTICLE VIII
## SICK LEAVE

### Section 1. Sick Leave:

A. All employees other than seasonal employees, shall be granted sick leave with pay at the rate of 0.4616 days per pay period, in which an employee is in a pay status for a minimum of five (5) days in a bi-weekly pay period. Accrued sick leave will carry over if employees change offices or Departments within the County or within the Circuit Court on the County payroll as long as there is no break in service longer than thirty (30) days.

B. Sick leave may be accumulated to equal, but at no time to exceed one hundred seventy-five (175) working days at the rate of twelve (12) working days per year. Records of sick leave credit and use shall be maintained by each office, department, or institution. Severance of employment terminates all rights to compensation hereunder. Amount of leave accumulated at the time when any sick leave begins shall be available in full, and additional leave shall continue to accrue while an employee is using that already accumulated.

C. Sick leave may be used for illness, disability, incidental to pregnancy, or non-job related injury to the employee; appointments with physicians, dentist, or other recognized practitioners; or for serious illness, disability, or injury of a member in the immediate family or household of the employee. After five (5) consecutive work days of absence due to illness, employees shall submit to their department head a doctor's certificate as proof of illness if so requested. Accordingly, sick leave shall not be used as additional vacation leave.

D. An employee who has been off duty for five (5) consecutive days or more for any health reason may be required to undergo examination by the Employer's physician before returning to work. For health related absences of less than five (5) consecutive days, a doctor's statement or proof of illness will not be required except in individual instances where the Employer has sufficient reason to suspect that the individual did not have a valid health reason for the absence. If indicated by the nature of a health related absence, examination by the Employer's physician may be required to make sure that the employee is physically fit for returning to work.

E. If, in the opinion of the Employer, the health of an employee warrants prolonged absence from duty, the employee will be permitted to combine his/her vacation, sick leave and personal days.

F. The employee may apply for disability under the rules and regulations established by the Retirement Board.

### Section 2. Disability Benefits:

Employees incurring any occupational illness or injury will be covered by Worker's Compensation insurance benefits. Employees injured or sustaining occupation disease on duty, who are off work as a result thereof shall be paid Total Temporary Disability Benefits pursuant to the Worker's Compensation Act. Duty Disability and ordinary disability benefits also will be paid to employees who are participants in the County Employee Pension Plan.

-11-

Duty Disability benefits are paid to the employee by the Retirement Board when the employee is disabled while performing work duties. Benefits amount to seventy-five percent (75%) of the employee's salary at the time of injury, and begin the day after the date the salary stops. Ordinary disability occurs when a person becomes disabled due to any cause, other than injury on the job. An eligible employee who has applied for such disability compensation will be entitled to receive, on the thirty-first (31st) day following disability, fifty percent (50%) of salary, less an amount equal to the sum deducted for all annuity purposes. The first thirty (30) consecutive days of ordinary disability are compensated for only by the use of any accumulated sick pay and/or vacation pay credits unless the employee and the Employer otherwise agree. The employee will not be required to use sick time and/or vacation time for any day of duty or ordinary disability. All of the provisions of this Section are subject to change in conjunction with changes in State laws.

## ARTICLE IX
## PENSION PLAN

### Section 1.    Pension Plan:

Pension benefits for employees covered by this Agreement shall be as mandated by the Illinois Pension Code [40 ILCS].

## ARTICLE X
## INSURANCE

### Section 1.    Health Insurance:

A.    The County agrees to maintain the current level of employee and dependent health benefits in accordance with Appendix C.

B.    Employees who have elected to enroll in the County's PPO health benefit plan shall contribute, in aggregate, by off set against wages, an amount of their base salary set forth in Appendix C as a contribution towards premium. Employees who have elected to enroll in the County's HMO health benefits plan shall contribute in aggregate, by offset against wages, the amount of their base salary set forth in Appendix C as a contribution towards premium. All rules and procedures governing the calculation and collection of such contributions shall be established by the County's Department of Risk Management, after consultation with Council 31. All employee contributions for Health Insurance shall be made on a pre tax basis.

In the event that the County agrees to or acquiesces in more favorable treatment to any individual or group covered by the County health benefits insurance, with respect to the health benefit plan, employee contribution levels, cost of living increases scheduled to go into effect on June 1, 1994, and January 1, 1995, Council 31 members shall receive the more favorable treatment as well.

### Section 2.    Life Insurance:

All employees shall be provided with life insurance in an amount equal to the employee's annual salary (rounded to the next $1,000.00), at no cost to the employee, with the option to

-12-

FILED DATE: 3/22/2019 9:57 AM    2019CH03742

purchase additional insurance up to a maximum of the employee's annual salary. No life insurance shall be offered through the County's HMO Plans.

**Section 3.**      Dental Plan:

All employees shall be eligible to participate, at no cost to them, in the dental plan in accordance with Appendix C. No dental coverage shall be offered through the County's HMO plans.

**Section 4.**      Vision Plan:

All employees shall be eligible to participate, at no cost to them, in the vision plan in accordance with Appendix C. No vision coverage shall be offered through the County's HMO plans.

**Section 5.**      Hospitalization – New Hires:

All new employees covered by this Agreement shall be required to enroll in the County HMO plan of their choosing, such enrollment to be effective from the date of hire through the expiration of the first full health plan year following such date of hire.

**Section 6.**      Insurance Coverage for Laid Off Employees:

Employees on layoff status shall retain health and dental insurance coverage for a period of four (4) months following the month in which the effective date of the layoff with the Employer paying the full premium, single or family plan as appropriate.

**Section 7.**      Insurance Opt-Out:

Effective the first full pay period after 12/1 of each fiscal year, the Employer agrees to pay $800.00/year to eligible employees who opt-out of the Employer's health benefit program. Prior to opting-out of any such program, the employee must demonstrate to the Employer's satisfaction that he/she has alternative health care coverage. Any employee electing to opt-out of the Employer health benefit program may request that in lieu of a bi-weekly payment to the employee this amount can be credited to a medical flexible spending account. Eligible employees who lose their alternative health care coverage may enroll in or be reinstated to the Employer's health care benefit program.

**Section 8.**      Domestic Partner Coverage:

Domestic partners of the same sex shall be eligible for the County's health, dental, and vision benefits in accordance with the Cook County resolution regarding Employee Domestic Partnership Benefits.

**Section 9.**      Benefit Eligibility:

Children will be eligible for health insurance benefits in accordance with applicable state and federal law.

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

<u>Section 10.</u>   Generic Step Therapy and Mandatory Maintenance

Generic Step Therapy will be included in the County's prescription drug program. Where therapeutically appropriate, Generic Step Therapy will require employees to use up to two therapeutic generic alternatives in certain drug classes before the brand will be covered. Generic Step Therapy will apply only to a new prescription fill of a targeted brand. Upon introduction of any new drug or drug class to the established step therapy program, the program requirements will only apply to new prescription fills as well. Employees whose physicians supply medical evidence explaining why a generic alternative is not appropriate, which after review is approved by the Pharmacy Benefit Manager (PBM), shall be exempt from the generic step therapy requirement.

Prior to implementation and upon request, a three month courtesy grace period can be provided to individual members for existing prescriptions.

After two 30-day fills of a maintenance medication obtained at a retail pharmacy, maintenance medication must be refilled in a 90-day supply through mail-order or specified retail pharmacies. Maintenance medication is a prescription drug taken continuously to manage chronic or long-term conditions as determined by the plan. The maintenance medication list is maintained by the Pharmacy Benefits Manager (PBM).

**ARTICLE XI**
**ADDITIONAL BENEFITS**

<u>Section 1.</u>   Bereavement Leave:

In the event of death in the immediate family or household, an employee will be granted as an excused absence such time as reasonably may be needed in connection therewith. For purposes of this Section, an employee's immediate family includes mother, father, husband/wife, child (including step children and foster children), brothers/sisters, grandchildren/grandparents, spouse's parents or such persons who have reared the employee. Any of the days between the date of the death and date of burial (both inclusive), plus any necessary travel time, on which the employee would have worked except for such death and on which he/she is excused from his/her regularly scheduled employment, shall be paid for at the regular straight-time hourly rate (including any applicable shift premium), provided, however, that such payment shall not exceed three (3) normal days pay, except where death occurs and the funeral is to be held outside a one-hundred and fifty (150) mile radius from the Cook County Building, 118 North Clark Street, Chicago, Illinois, the employee shall be entitled to a maximum of five (5) normal days pay.

To qualify for pay as provided herein, the employee must present satisfactory proof of death, relationship to the deceased and attendance at the funeral. Any additional time needed in the event of bereavement may be taken as emergency vacation. If an employee's vacation is interrupted by a death in the immediate family, bereavement pay as described herein shall be allowed, and such days will not be counted as vacation.

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

### Section 2. Parental Leave

All full-time Employees shall be eligible for paid time off as a result of the birth or adoption of a child ("Parental Leave") under the following conditions. To be eligible for Parental Leave, an employee must apply for and be determined to be eligible for FMLA (Family and Medical Leave Act) leave. If an employee has FMLA coverage at the time he or she requests Parental Leave, and has utilized some or all of the allotted 480 hours of FMLA coverage, the employee will nevertheless be entitled to Parental Leave pursuant to all other provisions of this section and provided that the employee submits an FMLA certification form to support the request for Parental Leave.

Eligible employees are entitled to receive the following Parental Leave:
- Up to four (4) weeks of Parental Leave to a birth mother to recover from a non-surgical delivery; or
- Up to six (6) weeks of parental Leave to a birth mother to recover from a surgical delivery; or
- Up to two (2) weeks of Parental Leave for the birth of a child or children to a spouse or domestic partner or civil union partner; or
- up to two (2) weeks of Parental Leave for the adoption of a child or children by the employee or the employee's spouse or domestic partner or civil union partner

Parental Leave shall be administered in conjunction with the Family & Medical Leave Act and may be combined with other accrued paid time off such as vacation, personal, and/or sick time to achieve the maximum amount of paid time off while taking FMLA leave. However, employees cannot use Parental Leave prior to the date of birth/adoption and must use Parental Leave in a continuous block of time beginning on the day of birth or adoption. An employee who qualifies for Parental Leave may be entitled to additional time off pursuant to the FMLA. Health insurance benefits for an employee receiving Parental Leave shall be maintained and administered under the same conditions as for an employee covered by FMLA.

Parental Leave shall be considered as alternative to Maternity or Paternity Leave under Article XII, Section 7, and an employee who chooses Parental Leave will not be eligible for additional Maternity or Paternity Leave.

### Section 3. Personal Days:

All full time employees, shall be permitted four (4) days off with pay for personal leave for such occurrences as observance of a religious holiday or for other personal reasons. Such personal days shall not be used in increments of less than one-half (1/2) day at a time. If the health of an employee warrants prolonged absence from duty, the employee will be permitted to combine personal days, sick leave, and vacation leave. Two (2) personal days may be used for observance of religious holidays prior to accrual, to be paid back at the rate of future accrual. Employees must complete and submit the designated appropriate form for approval of personal day use to their supervisor no less than 48 hours prior to use. It is understood that circumstances may arise in which an employee is unable to meet the request time requirement. In these

situations, employees may be allowed the use of personal days in the Employer's sole discretion. Such approval will not be unreasonably withheld. Severance of employment shall terminate all rights to accrued personal days.

### Section 4.    Jury Duty:

Approval will be granted for leave with pay, for any jury duty imposed on any officer or employee of the Chief Judge. However, any compensation, exclusive of travel allowance received, must therefore be turned over to the Chief Judge by said officer or employee.

### ARTICLE XII
### LEAVES OF ABSENCE

### Section 1.    Regular Leave:

An employee may be granted a leave of absence without pay by the Director of Court Services. Such leave shall be intended to take care of emergency situations and shall be limited to one (1) month for every full year of continuous employment by the County, not to exceed one (1) year, except for military service. An employee desiring a leave of absence shall make written application to his/her immediate supervisor, who will then refer the application to the Director of Court Services. The application shall include the purpose for the leave of absence and the dates for which the leave is requested. An employee granted a leave of absence shall be eligible, when such leave expires, to receive the salary and the same or comparable position at the time the leave was granted.

Absence from Circuit Court service on leave without pay for periods in excess of thirty (30) calendar days, all suspensions, time after layoffs for more than thirty (30) calendar days but less than one (1) year and all absences without leave shall be deducted in computing total continuous service and will effect a change in the anniversary date.

### Section 2.    Seniority on Leave:

An employee on an approved leave of absence shall retain seniority, but shall not accrue pension benefits during such period (except as may be otherwise provided in the County's Pension Plan). Nor shall such period count toward an employee's entitlement to automatic progression in scale based on length of service. Employees shall however, receive retroactive increases for all time in which they were in pay status. An employee returning from a leave of absence will be entitled to return to the same or comparable position held prior to commencement of such leave, if the employee has sufficient seniority. Additionally, an employee may be allowed to return to their previously held assignment provided the position was filled no more than five (5) days prior to the return of the employee.

### Section 3.    Retention of Benefits:

An employee will not earn sick pay or vacation credits while on a leave of absence. An employee on a leave of absence except for maternity or paternity leave will be required to pay the cost of the insurance benefits provided in Article X in order to keep these benefits in full force and effect during the period of leave. Arrangements for payments of such costs through

-16-

normal deductions or otherwise must be made with the Employer's Payroll Office prior to departure on the leave. For the failure to make such arrangements, the Employer may cancel insurance benefits, which will be reinstated upon the employee's return to work, subject to such waiting period and other rules and regulations as may be applicable to the insurance plan.

**Section 4.    Union Leave:**

A leave of absence not to exceed one (1) year without pay, will be granted to an employee who is elected, delegated or appointed to participate in duly authorized business of the Union which requires absence from the job. Such leave may be extended by mutual agreement. Employees duly elected as delegates of the Union will be allowed time off, without pay, to attend National conferences and conventions of the Union, not to exceed ten (10) work days for all employees. Sick pay, vacation and insurance benefits will be provided as set forth in Section 3 of this Article provided that it will not seriously affect the performance of the Office.

Elected delegates will be permitted to attend a national and/or state AFSCME convention once every year without loss in pay for the time spent in route to and from, and attending the convention, up to two (2) days for national and/or state convention.

Convention delegates as per the following per local:

Less than 100 - 1
Less than 200 - 2
Less than 300 - 3
Less than 400 – 4

One per additional thousand or fraction thereof.

**Section 5.    Military Leave:**

An eligible employee who requires leave from employment for purposes of military service shall be entitled to compensation, benefits, restoration rights, and other guarantees provided by applicable federal or state statute or Cook County Ordinance or Resolution.  An employee who has at least six (6) months or more of continuous actual service and is a member of the Illinois National Guard or any of the Reserve components of the Armed Forces of the United States, shall be entitled to leave of absence with full pay for limited service in field training, cruises and kindred recurring obligations. Such leave will normally be limited to eleven (11) working days in each year.

**Section 6.    Veteran's Conventions:**

Any employee who is a delegate or alternate delegate to a National or State convention of a recognized veterans' organization may request a leave of absence for the purpose of attending said convention, providing, however, that any employee requesting a leave of absence with pay must meet the following conditions:

-17-

1. The employee must be a delegate or alternate delegate to the convention as established in the by-laws of the organization.
2. They must register with the credentials committee at the convention headquarters.
3. Their name must appear on the official delegate-alternate rolls that are filed at the State headquarters of their organization at the close of the convention.
4. They must have attended no other convention, with a leave of absence with pay, during the fiscal year.
5. The employee must produce, upon returning from the convention, a registration card signed by a proper official of the convention, indicating attendance.

**Section 7.     Family Responsibility Leave:**

Employees shall be granted maternity or paternity leaves of absence to cover periods of pregnancy and post partum child care. The length of such leave, in general, shall not exceed six (6) months, but may be renewed by the Department Head. In addition, an employee who has at least two (2) years of service and has a need to be absent from work to meet family responsibilities arising from the employee's role in his/her family or household may, upon request and for good cause shown, be granted a leave of absence for a period not to exceed a total of six (6) months (increasing up to one (1) year for those employees who have accrued personal leave entitling them to more time under current County policy) without pay. Eligible employees are entitled to up to twelve (12) work weeks unpaid leave for Family and Medical Leave Policy. Insurance coverage shall be maintained only in accordance with FMLA leave, i.e., up to twelve (12) weeks and meeting FMLA standards.

**Section 8.     Educational Leave:**

Upon request, a leave of absence for a period not to exceed one (1) year may be granted to a full-time employee with at least two (2) years of service, if operational needs allow, in order that the employee may attend a recognized college, university, trade or technical school, or high school, provided that the course of instruction is logically related to the employee's employment opportunities with the Employer.

**Section 9.     Use of Benefit Time:**

Except where required by law, employees shall not be required to use accumulated time prior to going on unpaid leave.

**Section 10.     Approval of Leave:**

No request for a leave, as defined in Sections 1 and 4 of this Article, will be considered unless approved by the Director of Court Services and the Director of Court Services shall not grant approval if, in his/her judgment, such absence from duty at the particular time requested would substantially interfere with the conduct of business.

-18-

FILED DATE: 3/22/2019 9:57 AM    2019CH03742

## ARTICLE XIII
## GRIEVANCE PROCEDURE

Section 1.    Policy:

The provisions of this Article supplement and modify the provisions of the Employer's Grievance Procedure applicable to all employees.

Section 2.    Definition:

A grievance is a difference between an employee or the Union and the Employer with respect to the interpretation or application of, or compliance with, the agreed upon provisions of the Agreement, the Employer's rules and regulations or disciplinary action. The Union will send copies of grievance appealed or submitted at Steps Two, Three and Four to the Chief Judge or his designee.

All grievances shall be in writing and contain a statement of the facts, the provision(s) of the Agreement which the Employer is alleged to have violated, and the relief requested. Failure to provide all of the above shall not be grounds for denial of the grievance.

A dispute between an employee (or his/her covered dependent) and the processor of claims shall not be subject to the grievance procedure provided for in this Agreement. Employees shall continue to be afforded an opportunity to present appeals of such insurance disputes to the County in person, and may have union representation at such proceedings. The County will endeavor to resolve such disputes with the processor of claims.

Section 3.    Representation:

Only the aggrieved employee(s) and/or representatives of the Union may present grievances. Employees may take up grievances through Steps One to Four either on their own or with representation by the Union. If an employee takes up a grievance without Union representation, any resolution of the grievance shall be consistent with this Agreement and the Union representative shall have the right to be present at such resolution. A grievance relating to all or a substantial number of employees or the Union's own interests or rights with the Employer may be initiated at Steps Two, Three or Four by mutual agreement. In grievances involving the Union's own interest or rights with the Employer, the Union must be a party to such mutual agreement.

Section 4.    Meetings:

At each step of the grievance procedure, the appropriate Employer representative shall meet in accordance with the time limits. The primary purpose of the meeting shall be for the purpose of attempting to resolve the grievance. The Employer representative shall be willing, and shall have the authority needed to engage in meaningful discussion for the purpose of resolving the grievance. There shall be no tape recording of any grievance meetings except by mutual agreement. When the meeting does not result in a resolution of the grievance, the Employer representative shall respond to the Union, in writing, within the time limits provided herein.

-19-

<u>Section 5.</u>     Grievance Procedure Steps:

The steps and time limits as provided in the Employer's Grievance Procedure are as follows:

**TIME LIMITS**

| Step | Submission Time (Calendar Day) | To Whom Submitted | Time Limit Meeting | Time Limit Written Response |
|------|-------------------------------|-------------------|--------------------|----------------------------|
| 1 | 30 days | Immediate Supervisor | 5 days | 5 days |
| 2 | 5 days | Chief Probation Officer/Designee | 5 days | 5 days |
| 3 | 10 days | Director of Court Services/Designee | 5 days | 5 days |
| 4 | 30 days | Chief Judge/Designee | 10 days | 20 days |
| 5 | 30 days | Impartial Party | 30 days | 30 days |

<u>Section 6.</u>     Time Limits:

The initial time limit for presenting grievances shall be thirty (30) days, or thirty (30) days from the time the grievant reasonably should have been aware of the occurrence giving rise to the grievance. Time limits may be extended by mutual agreement between the employee and/or the Union and the Employer.

<u>Section 7.</u>     Stewards:

The Union will advise the Employer in writing of the names of the Stewards and shall notify the Employer promptly of any changes. Stewards will be permitted to handle and process grievances referred by employees at the appropriate steps of the grievance procedure during normal hours without a loss of pay, provided that such activity shall not exceed a reasonable period of time, and shall not interfere with their work performance. On each occasion, stewards will obtain approval from their supervisor or an appropriate supervisor before leaving their assignment or area. Such approval will not be unreasonably withheld. Stewards will only handle grievances at their own work location. In the event a work location does not have a steward, a steward from the worksite closest to the grievance location will process the grievance. The Union President and Chief Steward will be allowed to handle grievances at any work site. The Union will not abuse this privilege.

After giving appropriate notice to their supervisor outside the bargaining unit, employees shall be allowed two days with pay to attend certified stewards training, if such attendance does not substantially interfere with the Employer's operations. Such training shall not exceed two (2) work days for each steward who has not previously attended training. The Union shall provide proof of attendance.

<u>Section 8.</u>     Union Representative:

Duly authorized representatives of the Union will be permitted at reasonable times to enter the appropriate County facility for purposes of handling grievances or observing conditions under which employees are working. These representatives will be identified to the Chief Judge/Designee and on each occasion will first secure the approval of the Chief Judge/Designee to enter and conduct their business so as not to interfere with the operation of the Employer and such approval shall not be unreasonably withheld. The Union will not abuse this privilege, and such right of entry shall at all times be subject to general Employer department rules applicable to non-employees.

<u>Section 9.</u>     Impartial Arbitration:

If the Union is not satisfied with the Step Four answer, it may within thirty (30) days after receipt of the Step Four answer submit in writing to the Chief Judge notice that the grievance is to enter impartial arbitration. If the two parties fail to reach agreement on an Arbitrator within ten (10) days, the Chief Judge and Union may request the State Labor Relations Board, American Arbitration Association or the Federal Mediation and Conciliation Service to provide a panel of arbitrators. Each of the two parties will confer within 7 days of receipt of the panel to alternately strike one name at a time from the panel until only one shall remain. The remaining name shall be the Arbitrator. The Union and the Chief Judge will make arrangements with the Arbitrator to hear and decide the grievance without unreasonable delay. The decision of the Arbitrator shall be binding. Expenses for the Arbitrator's services and the expenses which are common to both parties to the arbitration shall be borne equally by the Employer and the Union. Each party to an arbitration proceeding shall be responsible for compensating its own representatives and witnesses.

The Arbitrator, in his/her opinion, shall not amend, modify, nullify, ignore or add to the provisions of this Agreement. The issue or issues to be decided will be limited to those presented to the Arbitrator in writing by the Chief Judge and the Union. His/her decision must be based solely upon his/her interpretation of the meaning or application of the express relevant language of the Agreement. The decision of the Arbitrator made in compliance with the foregoing shall be final, shall be in writing, shall include the reasons for each finding and conclusion, and shall be rendered within thirty (30) days following the date of the last hearing conducted by the Arbitrator unless an extension of such period is agreed to by the Chief Judge and the Union.

<u>Section 10.</u>     Arbitration Panel:

The Union and the Employer shall meet within thirty (30) days after the effective date of this Agreement for the purpose of selecting a permanent panel of seven arbitrators. The arbitrators shall be selected on a rotating basis. Either party shall have the authority to strike an arbitrator from the permanent panel at any time. The struck arbitrator will proceed on the cases currently assigned, but will not receive any new case assignments. In the event that an arbitrator is struck from the panel, the parties shall meet as soon as possible to choose a mutually agreed upon replacement. Nothing herein shall prevent the parties, by mutual agreement, from selecting an arbitrator from outside the panel. Absent such mutual

-21-

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

agreement, the arbitrator shall be selected from the panel in accordance with the above procedure.

If an arbitration date is postponed, the party (Union or Employer) responsible for the postponement shall also be responsible for the arbitrator's charges in connection with the postponement. In the event the grievance is resolved, the parties shall split the cancellation fee.

### Section 11.  Advance Step Filing:

Where the authority to resolve grievances does not exist at the preliminary steps of the grievance procedure, grievances may be filed by the Union at the appropriate advanced step. The determination of where the authority exists to resolve grievances shall be made by the Employer.

### Section 12.  Expedited Arbitration:

The parties may mutually agree that a grievance shall be submitted to expedited arbitration. If the parties agree to expedited arbitration, the following provisions of this paragraph shall apply. Immediately upon notification of the designated arbitrator, the parties shall arrange a place and date to conduct a hearing within a period of no more than thirty (30) calendar days, unless the parties agree to a longer period. If the designated arbitrator is not available to conduct a hearing within the thirty (30) calendar days and the parties do not otherwise agree to a longer period, the next panel member in the rotation shall be notified until an available arbitrator is obtained. Nothing herein precludes multiple cases being heard on the same day before the same arbitrator.

The hearing shall be conducted under the following procedures:

A.    The hearing shall be informal.

B.    No briefs shall be filed or transcripts made.

C.    There shall be no formal rules of evidence; however, the arbitrator shall only rely on credible relevant evidence.

D.    The hearing shall normally be completed within one day.

E.    The arbitrator may issue a bench decision at the hearing, but in any event shall render a decision within seven (7) calendar days after the conclusion of the hearing. Such decision shall be based on the evidence before the arbitrator and shall include a brief written explanation of the basis for such conclusion. Any arbitrator who issues a bench decision shall furnish a written copy of the award to the parties within seven (7) calendar days of the close of the hearing.

The decision of the arbitrator shall be final and binding, except that it shall not be regarded as precedent or be cited in any future proceeding.

The parties further agree to increase the number of arbitrators on the panel to 12.

## ARTICLE XIV
## CONTINUITY OF OPERATION

**Section 1.    No Strike:**

The Union will not cause or permit its members to cause, and will not sanction in any way, any work stoppage, strike, picketing or slowdown of any kind or for any reason, or the honoring of any picket line or other curtailment, restriction or interference with any of the Employer's functions or operations; and no employee will participate in any such activities during the term of this Agreement or any extension thereof.

**Section 2.    Union Responsibility:**

Should any activity prescribed in Section 1 of this Article occur, which the Union has or has not sanctioned, the Union shall immediately:

    (a)    Publicly disavow such action by the employees or other persons involved;
    (b)    Advise the Employer in writing that such action has not been caused or
            sanctioned by the Union;
    (c)    Notify the employees, stating that it disapproves of such action, instructing
            all employees to cease such action and return to work immediately;
    (d)    Take such other steps as are reasonably appropriate to bring about
            observance of the provisions of this Article, including compliance with
            reasonable requests of the Employer to accomplish this end.

**Section 3.    Discharge of Violators:**

The Employer shall have the right to discharge or otherwise discipline any/or all employees who violate any of the provisions of this Article. In such event, the employee or employees, or the Union on their behalf, shall have no recourse to the grievance procedure, except for the sole purpose of determining whether an employee or employees participated in the action prohibited by this Article. If it is determined that an employee did so participate, the disciplinary action taken by the Employer may not be disturbed.

**Section 4.    No Lock-Out:**

The Employer agrees that it will not lock out its employees during the term of this Agreement or extension thereof.

**Section 5.    Reservation of Rights:**

In the event of any violation of this Article by the Union or the Employer, the offended party may pursue any legal or equitable remedy otherwise available, and it will not be a condition precedent to the pursuit of any judicial remedy that any grievance procedure provided in this Agreement be first exhausted.

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

Section 6.     Bargaining Unit Work:

The Employer will assign bargaining unit work to bargaining unit employees only, except where the Employer finds that it is not otherwise practical to use a unit employee, the Employer may use non-unit employees to do unit work in emergencies, to train or instruct employees, to do layout, demonstration, experimental, or testing duties, to do troubleshooting or where special knowledge is required, or where employees fail to report to work because of vacations, or other absences or tardiness, or for personal reasons during the course of the day, or because all of the employees are or will be occupied with assigned duties, or to complete a rush assignment.

A.     The use of interns or externs, i.e. students or graduates gaining supervised practical experience, shall not be construed to violate Article I, Section 2 (Bargaining Unit Work), provided that the use of such persons does not significantly impact the amount of work available for bargaining unit employees; and

B.     The use of non-bargaining unit employees to perform work in a pilot project of limited duration, for the purpose of determining the long term viability of the work, shall not be construed to violate Article I, Section 2 (Bargaining Unit Work), provided that the use of such persons does not significantly impact the amount of work available for bargaining unit employees.

## ARTICLE XV
## SAVINGS CLAUSE

Section 1.     General Provision:

Should any Article, Section or portion thereof, of this contract be held unlawful and unenforceable by any court of competent jurisdiction, or by an arbitrator or the Labor Relations Board, or by reason for any legislation that the parties agree invalidates a provision of this contract shall remain in full force and effect; upon the issuance of such a court decision or legislation, the parties agree to negotiate a substitute for the invalidated Article, Section or portion thereof.

Section 2.     Conduct of Lawsuit:

No provision in this contract may interfere with the supervision or conduct of a lawsuit by a judge. No provision in this contract interferes with the supervision or conduct of a lawsuit by a judge may be enforced, but the unenforceability of any such provision due to the conduct of a lawsuit by a judge shall not cause loss of wages or economic benefit to the members of the bargaining unit.

Section 3.     Judicial Powers:

No provision of this contract which materially and adversely effects or interferes with the exercise of the constitutional, statutory, or inherent judicial powers of the Judiciary or with the application of a rule or order of the Illinois Supreme Court may be enforced. During an emergency affecting the Court's business as reasonably determined by the Chief Judge, no provision in this contract which materially and adversely affects or interferes with the exercise

-24-

of the constitutional, statutory or inherent administrative powers of the Judiciary may be enforced. The unenforceability of any such provision shall not cause loss of wages or economic benefit to the members of the bargaining unit. The Union may raise other issues stemming from the way an emergency was dealt with pursuant to Article XIII of this Contract.

## ARTICLE XVI
## SUBCONTRACTING

### Section 1. Subcontracting:

It is the general policy of the Employer to continue to utilize its employees to perform work they are qualified to perform. The Employer may, however, subcontract where circumstances warrant, for example, for reasons of efficiency or economy. The Employer will advise the Union at least five (5) months in advance when such changes are contemplated and will discuss such contemplated changes with the Union, pursuant to the Illinois Public Labor Relations Act of 1984. The Employer will work with the Union in making every reasonable effort to place adversely affected employees in other bargaining unit positions.

## ARTICLE XVII
## PROFESSIONAL MEETINGS

### Section 1. Courses and Conferences:

It is the intent of the Administration to promote professional development of staff by attendance at professional meetings and conferences which offer programs relevant to the work of the Court and to the functions of its staff.

The opportunity to attend such courses and conferences will be offered to employees in an equitable manner. Any reasonable costs shall be paid for by the Employer on a reimbursement basis. The Deputy Chief Probation Officer/Training Department will receive, approve and post announcements of conferences. The announcement will specify the deadline for application. The Employer shall pay for all reasonable costs related to attendance at courses or conferences where an employee is required to attend at the request of the Employer.

Application for release time and/or conferences will be submitted in writing through channels, i.e., to the supervisor and the division head, Deputy Chief Probation Officer - Training Division and forwarded for clearance with the Chief Probation Officer. A copy of all the applications will be forwarded to Budget and Accounts.

The Personnel and Training Department will maintain a log of staff members who have been the beneficiaries of the conferences.

### Section 2. Organization Meetings and Committee Service:

When members of the bargaining unit are asked by the Employer to serve on committees outside the Court, excused time will be allowed for this purpose. Special Projects Committee activities during working hours resulting from a staff member's extra curricular professional interest will be subject to approval of the Chief Probation Officer and the Director of Court

Services.

## ARTICLE XVIII
## FILLING OF VACANCIES

**Section 1.** Posting:

A. Only new positions and specialized assignments shall be for bid at all worksites of the Juvenile Probation Office for a period of ten (10) working days and such postings shall state the grade, assignment and specialized assignment requirements.

Such vacancies need not be posted when vacancies occur directly from a prior filling of vacancy within the preceding thirty (30) days, but shall instead be filled from a permanent bid list described below.

Other vacancies shall be filled via the permanent bid list and shall be in accordance with the section on priority.

B. Employees may at any time request a transfer or promotion whether or not a position is currently available. Such requests shall be submitted via a "Filling of Vacancy Request Form" prepared by the Employer. An Employee's request for a transfer or promotion shall be submitted to the Department's Director of Human Resources.

An employee who submits a filling of vacancy request shall receive a time stamped copy of such request within three (3) work days after the Department's Director of Human Resources receives same, but no later than ten (10) work days after such request was initially made. The Personnel Section shall maintain a central file for filling of vacancy requests.

The Employer shall provide the Union on a quarterly basis a personnel transaction list for the Department indicating all new hires, transfers, promotions, demotions and terminations stating the name and seniority of each personnel transaction.

The Union shall upon request, receive copies of the current bid list. The Employer shall provide a current list to the Union of all positions that currently exist and on each occasion that a new position is created, the Union shall receive same.

Bids are valid for one year. An employee has two (2) working days to consider a position offer. If said bidder rejects the position, the employee's name shall be removed from the bid list for that position and may not rebid on that position for two (2) months.

When transfers occur due to the assignment of pre service employees, the bid list will be frozen three weeks prior to the conclusion of the pre service orientation class. The Employer will notify the Union within ten (10) calendar days of a pre service class convening to inform them of the date that the bid list will be frozen.

An employee may bid on only four positions at one time.

Section 2.        Priority:

A.        Permanent vacancies shall be filled in the following order of priority:

1.        Job Assignment / Transfer
2.        Recall from layoff
3.        Promotion
4.        Applicants outside the Bargaining Unit

An employee must remain in a position for six months before any transfer may be requested.

B.        For promotions of PO I to PO II, vacancies will be filled by the most senior person provided said candidate:

1.        Has not received a suspension in the past year.
2.        Has achieved meets on the standards on the past two performance appraisals.
3.        Has completed training hour requirements for previous year.
4.        Possesses specialized skills or expertise in a particular area when applicable.

C.        For promotions to PO III

I.        Vacancies for non-supervisory PO III positions will be filled by the most qualified applicant based on the following criteria:

1.        Completion of training hour requirements for the previous year.
2.        Scores of previous two performance appraisals.
3.        Has not been suspended in the past two years.
4.        Results of an interview, if required (only job related information will be considered).
5.        Specialized skills or other expertise in a particular area.
6.        Seniority.

II.        Vacancies for supervisory PO III positions will be filled by the qualified applicant with the highest cumulative score as described below.

An applicant is qualified who has met the following criteria:

1.        Has been employed with the Department for three prior consecutive years.
2.        Has met the standards of the most recent performance appraisal.
3.        Has completed the training hour requirements for the previous year.
4.        Has no disciplinary action which resulted in a written reprimand or suspension in the last two years.
5.        A written test score of 70 or more (One point for each correct answer on a 100 point objective question exam. One point bonus for each correct answer above a score of 75).

-27-

For applicants who receive a written test score of 70 or more, the following criteria and respective point values will be applied to their overall rating.

1. Education: Ten points for post graduate degree.
2. Seniority: Two points for each year of service beyond the three years required for application.
3. Military Service: Five points for federal or state military service from which applicant was honorably discharged.
4. Annual Evaluation: One point for each performance appraisal in which the applicant exceeds standards. Only the applicant's last two evaluations will be reviewed.
5. The combination of points for seniority and military service is capped at 25 points. All ties in cumulative scores will be broken by seniority. Qualified applicants will be placed on an eligibility list, ranked by cumulative score, for promotional consideration. The list will be active for 18 months.

D. Transfers will be filled by the most senior person provided said candidate meets the following requirements:

1. Has not received a suspension in the past year.
2. Has achieved meets on the standards on the past two performance appraisals.
3. Has completed training hour requirements for previous year.
4. Possesses specialized skills or expertise in an area when applicable.

## ARTICLE XIX
## DISCIPLINARY PROCEDURE

**Section 1.**    **Use of Discipline:**

The Employer has the right to discipline employees. The Employer may only impose the types of discipline listed in Section 2 of this Article. Although discipline shall normally be progressive and corrective, the Employer need not apply these types of discipline in sequence, but rather base the type of discipline to fit the severity of the offense and/or infraction involved. The Employer may only discipline an employee for just cause.

**Section 2.**    **Types of Discipline:**

A. The Employer may only impose the following types of discipline:

1. Verbal reprimand
2. Written reprimand
3. Suspension
4. Discharge

B. An employee shall not be demoted for disciplinary reasons.

-28-

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

C.     Discipline shall be imposed in a timely manner.

## Section 3.    Investigatory Meeting:

The Employer may, but is not required to, conduct an investigatory meeting with the employee who is the subject of the investigation. If an investigatory meeting is conducted, any employee who is the subject of the investigation or reasonably believes that he/she may receive disciplinary action as a result of such meeting, shall be entitled to Union representation upon request. The Employer shall notify the Union as well as the employee of such meeting and the reason for the meeting.

## Section 4.    Pre-Disciplinary Meeting:

A.    Purpose: Prior to the imposition of suspension or discharge the Department Head/Designee shall meet with the employee to discuss the circumstances giving rise to the contemplated discipline. The Employer, after presenting all known evidence and reasons for disciplinary action, will afford the employee an opportunity to rebut any evidence or charges against him/her.

B.    Representation: The employee is entitled to have a Union representative present at the Pre-Disciplinary meeting if the employee so requests. If the employee does not request Union representation, a Union representative shall nevertheless be allowed to be present as a non-active participant.

C.    Extensions: Reasonable requests for extensions of time for rebuttal purposes may be allowed by the Department Head / Designee.

D.    Notices: The Employer will notify the employee of the date of the Pre-Disciplinary meeting. No less than two (2) working days prior to the meeting date, the Employer will provide the employee and the Union with the date, time and location of the meeting, the reason(s) for the contemplated disciplinary action, and the names of relevant witnesses and copies of pertinent documents.

## Section 5.    Verbal and Written Reprimands:

In cases of verbal and written reprimands, the Employer must inform the employee that he/she is receiving a verbal or written reprimand and provide the employee with the reasons for such discipline. The employee is entitled to Union representation when receiving a written reprimand. A copy of the verbal reprimand or the written reprimand itself shall be placed in the employee's personnel file and shall only be removed in accordance with Section 7 of this Article.

## Section 6.    Notification of Disciplinary Action:

In the event disciplinary action is imposed, the Employer shall promptly furnish the employee and the Union a clear and concise statement describing the discipline and the reasons for such discipline. Once discipline is imposed it shall not be increased.

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

The Employer shall inform the employee of the right to Union representation prior to any meeting with the employee at which discipline other than oral reprimand is to be imposed. The employee shall be given an opportunity, if so desired, to notify the Union of said meeting.

### Section 7. Removal of Discipline:

Oral reprimands will be purged from an employee's records if the employee is free from the same or similar offense for twelve (12) consecutive months.

Written reprimands will be purged from an employee's record if the employee is free from the same or similar offense for eighteen (18) consecutive months. Although suspensions shall not be expunged from an employee's record despite the passage of time, the time which has elapsed since such discipline was imposed as well as any subsequent discipline will be taken into consideration in determining the current level of discipline to be administered.

### Section 8. Temporary Suspension:

When the Employer believes that the presence of an employee is dangerous or may result in the disruption of operations or when the employee's alleged actions may result in a violation of the Rules of Professional Conduct, and/or Code of Conduct referenced in the Employer's policy and procedure manual, which are established to promote the integrity of the department and the judiciary, and/or criminal charges are filed and pending against an employee, that employee may be placed on temporary suspension. Temporary suspension shall only last up to thirty (30) calendar days for actions not involving criminal charges unless the Employer informs the Union that up to an additional fifteen (15) days are necessary to conclude its investigation. Where criminal charges are pending against an employee, temporary suspension will last until resolution of the criminal charges or for the period of time in which the Employer conducts a reasonable investigation and determination of the matter, whichever is less.

The first 14 calendar days of temporary suspension shall be without pay. An employee may use accrued vacation, personal and compensatory time after the first 14 calendar days of temporary suspension has elapsed.

If no disciplinary action is begun by the Employer, the employee shall be reinstated, reimbursed for lost salary and accrued leave and the record of the temporary suspension shall be removed from the personnel file. If the length of the temporary suspension exceeds the disciplinary action given, the employee shall be reimbursed for the difference in salary and accrued leave.

If the employee is placed on temporary suspension exceeding 45 days, that employee may file a grievance for the sole purpose of determining whether continued temporary suspension is reasonable. Resolution of this grievance shall in no way waive an employee's right to grieve any discipline ultimately issued.

## ARTICLE XX
## MISCELLANEOUS

Section 1.    Transportation:

Employees shall be reimbursed for use of their personally owned automobile according to the provisions of the Cook County Travel Expense Reimbursement Policy.

Section 2.    Meeting Rooms:

Upon prior approval, the Employer agrees to make available conference and meeting rooms for Union meetings during non-working time unless to do so would interfere with the operating needs of the Employer. Employees may only attend meetings during non-working time.

Section 3.    Personnel Files:

Upon written request to the Department Personnel Office, an employee may inspect his/her personnel file at any time mutually acceptable to the employee and Employer.

The Employer shall maintain personnel records in accordance with the Personnel Records Review Act.

Section 4.    Payroll Deductions:

The following non-mandatory deductions will be made from the salary of each employee upon the employees request:

1.    Savings Bonds
2.    United Way/Crusade of Mercy
3.    Deferred Compensation
4.    Life Insurance
5.    Credit Union

The Employer will make authorized adjustments in deductions when requested by the employee.

Section 5.    Dual Employment:

Employees are subject to the Employer's current policy of dual employment.

Section 6.    Performance Evaluations:

Employees in the bargaining unit shall be subject to performance appraisal pursuant to guidelines developed by the Office of the Chief Judge in cooperation with the Administrative Office of the Illinois Courts.

Each employee in the bargaining unit shall be evaluated on an annual basis. An employee's performance evaluation shall be completed by their immediate supervisor. An

-31-

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

employee's performance evaluation shall be reviewed and discussed with the employee and the employee shall be permitted to respond in writing to their evaluation.

An employee's signature shall signify only that he or she has been given his or her performance evaluation; the employee's performance evaluation may not be altered subsequently without the employee's review.

Where the statement of an objective was not reasonably attained, the relative weights for other sanctions of the employee's performance evaluation form shall be adjusted proportionately to allow for distribution of the total possible points.

Where standard objectives are applied to employees whose actual caseloads or workloads vary materially, the supervisor shall identify, document and take into consideration the varying caseload and workload characteristics during the performance evaluation process.

In the event that an employee disagrees with the rating received on his or her annual performance evaluation which has an impact or effect upon such employee, the employee may utilize the grievance and arbitration procedures set forth in this Agreement; provided however, that the employee must comply with the time limits contained in Article XIII of the Agreement, with such time limits for the institution of a grievance running from the date of the evaluation. The supervisor will inform the employee at that time of such impact. The only determination to be made in such grievance or arbitration proceeding is whether or not the employee was entitled to the applicable payment. In making this determination, the arbitrator will not disturb the Employer's decision unless the arbitrator finds that the Employer's action was unreasonable.

In the event that an employee disagrees with the rating received on his or her annual performance evaluation, which has not yet had an impact or effect upon such employee, the employee may not utilize the grievance and arbitration procedures set forth in this Agreement; provided, however, that the employee may submit, in writing, if he or she desires, the basis for such a disagreement to the next level of management and reasonable efforts shall be made to resolve the disagreement; and provided, further, that the employee shall be afforded an opportunity to make written comments relating to the disagreement and that such written comments shall be attached to the performance evaluation form and retained in the employee's personnel file. In the event that the rating received on an employee's annual performance evaluation subsequently has an impact or effect upon such employee and a grievance is filed over that impact or effect, such materials in the employee's personnel file shall be considered relevant at that time.

## Section 7. Personnel Manual:

It is understood that employees are subject to the policies, procedures, terms and conditions of employment as outlined in the Juvenile Court Personnel Manual except as otherwise modified by this Agreement.

## Section 8. Bulletin Boards:

The Employer will make bulletin boards available for the use of the Union at all

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

major work sites. The items posted shall not be political, partisan or defamatory in nature. The bulletin boards will be glass enclosed with a lock and key provided.

**Section 9.** No Discrimination:

No employee shall be discriminated against on the basis of race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, political affiliation and/or beliefs, or activity or non-activity on behalf of the Union. Employees are required to comply with the Employer's policies on discrimination and harassment.

**Section 10.** Americans with Disabilities Act:

Whenever an employee (or the Union at the request of an employee) requests accommodation under the Americans with Disabilities Act ("ADA"), or an accommodation of an employee is otherwise contemplated by the Employer, the Employer, the employee and the Union will meet to discuss the matter.

It is the intent of the parties that any reasonable accommodations adopted by the Employer conform to the requirements of this Agreement where practical. The Employer may take all steps necessary to comply with the ADA. Any such steps which might conflict with the terms of this Agreement shall be discussed with the Union prior to implementation. The parties shall cooperate in resolving potential conflicts between the Employer's obligation under the ADA and the rights of the Union. Neither party shall unreasonably withhold its consent to the reasonable accommodation of an employee. Information obtained regarding the medical condition or history of an employee shall be treated in a confidential manner. Nothing in this Section shall require the Employer to take any action which would violate the ADA or another applicable statute.

**Section 11.** Travel Reimbursement:

Employees required to use personally owned automobiles in the course of their employment shall be reimbursed in accordance with the Cook County Travel Expense Reimbursement Policy, except that the reimbursement rate shall not at any time be less than the maximum allowable business standard mileage rate set by the Internal Revenue Service. Provided, however, that the Employer will have sixty (60) days to implement any revised rates from the effective date of such rate set by the Internal Revenue Service.

**Section 12.** Auto Insurance:

The parties agree that the County shall explore the feasibility of making available to all employees through a payroll deduction, standard automobile insurance on a no decline basis. No later than ninety (90) days

**Section 13.** Direct Deposit:

The County will continue the direct deposit program to the financial institution(s) of the employee's choice. The receiving financial institutions must be capable of receiving direct deposits.

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

<u>Section 14.</u>    Day Care:

A Day Care Committee composed of a mutually agreed upon equal number of Union and Employer representatives shall meet to study the feasibility of establishing day care centers for the dependents of employees of the Employer.

<u>Section 15.</u>    Tax Shelters:

The Employer will continue to allow the employees covered by this Agreement to participate in the County's tax shelter programs related to child care expenses, medical expenses, and insurance premium contributions.

<u>Section 16.</u>    Part Time Employment:

A.    Employees in the program shall be required to work 50% of full time scheduled hours in a normal pay period.

B.    Employees in the program shall accrue sick, vacation and personal day leave, as well as seniority, at a 50% prorated rate. Employees shall be eligible for health and/or life insurance benefits by contributing 50% of the employee cost for those benefits to the County.

C.    The Employer and the Union will continue to meet and discuss the use of part time employees.

<u>Section 17.</u>    Quality Standard Committee:

Within sixty (60) days of this Agreement, the Employer and the Union will each identify four (4) committee members who will serve on the Quality Standards Committee. Members selected must be current in their assigned duties. This committee will assist the Department management in endeavoring to achieve caseload equity to the greatest extent practicable among officers.

To accomplish this goal, the Department will make available to the committee caseload related information. The committee will meet quarterly with additional meetings as necessary. Recommendations developed by the Committee will be forwarded to the Director of Court Services.

<u>Section 18.</u>    Personal Support Program (PSP):

In addition to the County's Employee Assistance Program, coverage will continue for all AFSCME bargaining unit members and their dependents under the AFSCME Personal Support Program (PSP). Effective approval of this agreement by the Cook County Board of Commissioners, the Employer agrees to pay thirty-four dollars ($34.00) per year, per AFSCME bargaining unit member to the AFSCME Benefit Plan and Trust to fund the PSP. Effective December 1, 2011, the Employer agrees to pay thirty-five dollars ($35.00) per year, per AFSCME bargaining unit member to the AFSCME Benefit Plan and Trust to fund the PSP.

FILED DATE: 3/22/2019 9:57 AM 2019CH03742

**Section 19.** Employee Development and Training:

The Employer and the Union recognize that changes resulting from technological innovations may occur during the course of this contract. If such changes occur, the Employer shall give primary consideration to the Employer's operations. In the event the affected employees do not possess the requisite skills or knowledge to perform the required work, the Employer shall endeavor to provide the necessary in-house training.

**Section 20.** School Conference and Activity Leave:

The Employer must grant an employee leave of up to a total of 8 hours during any school year in increments of no less than one (1) hour, no more than 4 hours of which may be taken on any given day, to attend school conferences or classroom activities related to the employee's child in accordance with the School Visitation Rights Act 820 ILCS 147.

**Section 21.** Mass Transit Benefit Program:

As soon as the Cook County payroll system is capable, the Employer shall provide a pre-tax payroll deduction program for transportation expenses in accordance with and to the extent permitted by law.

**Section 22.** Personnel Rule Changes:

When the Employer is considering modifications in its personnel policies or rules, it shall notify the Union at least twenty-one (21) calendar days prior to any modification, and shall discuss such contemplated changes with the Union, pursuant to the provisions of the Illinois Public Labor Relations Act.

**Section 23.** Printing of Contracts

The Union will have this Agreement printed in booklet form. Employees shall receive a copy of the printed Agreement. The Union shall receive a reasonable number of extra copies. The Employer shall pay half the Union's cost of printing.

If the Employer does not reimburse the Union within sixty (60) days of its receipt of the bill, the Employer will be liable for the full cost of printing.

### ARTICLE XXI
### HEALTH AND SAFETY

**Section 1.** General:

The Employer shall endeavor to provide a safe and healthy work environment for all employees. The Employer agrees to comply with all applicable State and Federal laws. The parties shall share information adequately and fully in order to assure that health and safety issues are adequately addressed. Where there is a serious threat to the health and safety of an employee or employees and the situation necessitates a speedy resolution, the issue shall be immediately referred to the appropriate committee as set forth in Section 2 below.

FILED DATE: 3/22/2019 9:57 AM  2019CH03742

### Section 2.   Health and Safety Committee:

The Employer, the County and AFSCME shall establish a joint labor/management Health and Safety Committee. The parties shall also establish joint subcommittees, as needed, by work location. Issues of a County wide nature, and those not resolved in subcommittees, shall be discussed in full committee. The full committee and the subcommittees shall meet at least quarterly. Additional meetings shall be scheduled as needed to assure that issues are adequately addressed.

The committee and subcommittees shall meet for the purpose of identifying and correcting unsafe or unhealthy working conditions, including but not limited to inadequate ventilation, ergonomically incorrect equipment, unsanitary conditions, inadequate personal security for employees, inadequate lighting, and developing guidelines for control of communicable diseases. Within a reasonable period of time after the effective date of this Agreement, the parties agree to meet to establish the composition and operation of the subcommittee(s).

### Section 3.   Video Display Terminals:

The Employer and the Union will attempt to keep current with monitoring studies and reports on the effects, if any, of video display terminals and their effects on the health and safety of the operators.

The Employer agrees that employees who operate VDT's will be granted 15 minute breaks away from the screen in the first and second half of their shifts. For those employees who already receive two 15 minute breaks, this provision is not in addition to those breaks currently granted. Pregnant employees and employees who are nursing and who regularly operate VDT's may request an adjustment, if such adjustment or change can reasonable be made and is consistent with the Employer's operating needs. Once the employee is no longer pregnant or nursing, the employee shall be allowed to return to her original position if available.

### Section 4.   Communicable Diseases:

The Employer and the Union are committed to taking reasonable necessary steps to limit and/or prevent the spread of communicable diseases in the workplace. Therefore, generally, the Employer agrees as follows:

A.   To provide training and/or distribute written materials to employees regarding the protocols for preventing the spread of communicable diseases. The extent and level of training provided will vary based on the needs of the applicable entity.

B.   To make professional medical counseling available to any employee who has reason to believe that he/she has become infected with TB, HIV or Hepatitis during the course of his/her employment.

C.   The Employer shall make available to the employee who has occupational exposure during the course of his/her employment to blood or body substances, a Hepatitis B vaccine at no cost to the employee. The Employer will continue to allow employees covered by

this Agreement to receive flu vaccines offered by the Cook County Department of Public Health in accordance with prior policy. TB screening will be provided to employees who can demonstrate reasonable cause to believe they were placed at risk to TB during work. Specific concerns relating to the health and safety of employees may be referred to the applicable health and safety committee or subcommittee. Said committee(s) shall share necessary and relevant information, so long as it is not privileged, and shall develop a comprehensive policy/policies to be applied to specific work places. The Employer shall provide access to experts in the area of communicable diseases, as necessary for the committee(s) to develop and implement the policy/policies. Such experts and their participation shall be mutually agreed upon.

## ARTICLE XXII
## UPWARD MOBILITY PROGRAM

Section 1.    Goals and Priorities:

A.    It is the goal of the parties to enhance the ability of employees to qualify for positions targeted in the Upward Mobility Program. The Employers and AFSCME are committed to improving career advancement opportunities for employees. It is the goal of the Employers to provide employees with training and promotional opportunities through the establishment of an Upward Mobility Program.

In order to assist the parties in achieving the goals set forth above, an Advisory Committee comprised of representatives from the Union and Employer shall be established. The Committee's mission shall be to develop recommendations regarding the Program, including which job classifications are appropriate for training programs, the publicity and counseling efforts necessary for implementation, and the potential providers of services.

Targeted job classifications may be within any existing AFSCME bargaining unit or may be classifications which represent a bridge to career advancement outside any AFSCME bargaining unit for AFSCME bargaining unit employees.

B.    Needs Assessment. The Advisory Committee shall undertake a needs assessment, based upon the goals enumerated in Section A, and shall make a recommendation to the parties not later than June 1 of each year of this agreement. Such requests shall include a needs request for the fiscal year commencing December 1 of each calendar year, and shall include a discussion of the value of such program. If funds are allocated by the County Board, they shall be for the purpose of establishing need training initiatives, as outlined in Section 1, and are designed to supplement existing employer training and development programs.

## ARTICLE XXIII
## JOB CLASSIFICATIONS

Section 1.    Classification Review Committee/Job Audits:

Within thirty (30) days from the effective date of this Agreement, the parties shall begin regular meetings of a joint committee that shall be established to discuss current job titles and pay grades of bargaining unit employees.

The committee shall begin meeting each year to review Union and employee-generated requests for upgrades and reclassification. Such review shall include requests for individual desk audits, and sample desk audits to be applied to whole departments. The committee shall devote sufficient time in order to complete its discussions in a timely fashion. In any case, audits agreed upon shall be completed no later than June 1st of each year. During such process, there will be a free exchange of information and the parties will make reasonable attempts to review those requests which appear to have the most merit using objective and fair standards. After the review and analysis is completed, the County will submit the Committee's findings to the appropriate departments and elected officials for their review. The decision as to whether to include any or all of the upgrades and reclassification requests shall be made using objective and fair standards.

## ARTICLE XXIV
## EDUCATIONAL BENEFITS

**Section 1.** **Educational Fund:**

The Employer agrees to allocate funds for education purposes in each year of the Agreement to be made available to all AFSCME bargaining unit employees. The amount allocated shall be an aggregate total of forty thousand dollars ($40,000.00) for all AFSCME bargaining units. Employee requests for such funds shall be for reimbursement for the costs of courses offered through any certified educational institution, including community colleges, continuing adult education and other training or technical institution. Such course work shall be employment related. An employee may request funds up to an amount no greater than five hundred fifty dollars ($550.00) in a fiscal year. Approval for reimbursement shall be offered on an equitable basis.

The parties shall meet upon reasonable notice regarding this educational benefit.

## ARTICLE XXV
## UNION RIGHTS

**Section 1.** **Information Provided to Union:**

At least quarterly, the County on behalf of all employees covered by this Agreement, shall notify Council 31 in writing of the following personnel transactions involving bargaining unit employees within each department and on a work location basis: new hires, promotions, demotions, checkoff revocations, layoff, re-employments, leaves, returns from leave, suspensions, discharges, terminations, retirements, and Social Security numbers. Council 31 shall, upon request, receive such information on computer tapes, where available.

## ARTICLE XXVI
## RATES OF PAY

**Section 1.** **Salary Raises:**

The salary grades and steps applicable to this bargaining unit shall be increased as follows during the term of this agreement as set forth in Appendix B:

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

A. Effective the first full pay period on or after June 1, 2013, the pay rates for all classifications shall be increased 1.00%
B. Effective the first full pay period on or after June 1, 2014, the pay rates for all classifications shall be increased 1.50%
C. Effective the first full pay period on or after June 1, 2015, the pay rates for all classifications shall be increased 2.00%
D. Effective the first full pay period on or after December 1, 2015, the pay rates for all classifications shall be increased 2.00%
E. Effective the first full pay period on or after December 1, 2016, the pay rates for all classifications shall be increased 2.25%
F. Effective the first full pay period on or after June 1, 2017, the pay rates for all classifications shall be increased 2.00%

### Section 2.    Classification Change:

Effective June 1, 1995, the classification of PSHB shall be created. This grade shall be paid at a rate of 2% higher than grade PSH. Officers shall move into this pay grade after five years of service in pay grade PSH or PSI. (See Appendix B)

### Section 3.    Equipment Allowance:

An initial equipment allowance of $250.00 will be paid to all new bargaining unit employees in IPS, or employees who transfer into IPS, after the officer has been trained and has been in full pay status for six (6) months with that unit. Each year thereafter, the equipment allowance is limited to $100.00 and will be remitted to that officer, provided the officer remains in the IPS unit for at least six months of the fiscal year.

### Section 4.    Longevity Plan - Probation Services:

Effective 6/1/99, the pay rate for the twenty (20) year longevity step (09) will be adjusted by 1%.

Grade PSB -    Effective December 1, 2002, the existing percent differential between steps 5 and 6 was raised by .35%. The differential between steps 6 and 7 was raised by .65%.

Grade PS3-    Effective December 1, 2002, step 7 is adjusted (increased) to reflect 5.0% differential over step 6.

### Section 5.    Bilingual Pay:

Effective December 1, 1993, employees whose positions require the employee to be bilingual, or to use sign language, shall receive an additional $25.00 per month. Effective December 1, 1994, the amount shall be increased to $50.00 per month.

### Section 6.    Merit Bonus:

Any employee who exceeds the standards on his/her annual performance evaluation shall receive a lump sum bonus payment. Such payment shall equal 2% of an employee's annual salary

provided that less than 30% of the grade is found to exceed the performance standard. When the number of employees found to exceed the standard in a grade exceeds 20%, such payment shall be divided up equally among all employees in each grade and shall be based on 2% of 20% of the gross total salaries in each grade. Such bonus will be granted no later than July 1st of each year for the previous year's performance evaluation.

ARTICLE XXVII
DURATION

Section 1.    Term:

This Agreement shall become effective on December 1, 2012, and shall remain in effect through November 30, 2017. It shall automatically renew itself from year to year thereafter unless either party shall give written notice to the other party not less than sixty (60) calendar days prior to the expiration date, or any anniversary thereof, that it desires to modify or terminate this Agreement.

In the event such written notice is given by either party, this Agreement shall continue to remain in effect after the expiration date until a new Agreement has been reached or either party shall give the other party five (5) calendar days written notice of cancellation thereafter.

Signed and entered into this _____ day of _____, 2016.

Chief Judge of the Circuit Court of Cook County

By: _____
Timothy C. Evans
CHIEF JUDGE

Union: American Federation of State, County and Municipal Employees (AFSCME), Council 31, Local 3477, AFL-CIO.

By: _____         _____

_____         _____
                                        Emily Pierce

_____
Melissa K. Muller

_____
Johana M. Almanza

-40-

SIDELETTERS AND MEMORANDUMS OF UNDERSTANDING

MEMORANDUM OF UNDERSTANDING

Cook County and AFSCME Council 31, AFSCME locals 1111, 1178, 1276, 1767, 2226, 3315, 3477, 3486, 3692, 3696, 3958, and 3969 agree that Cook County will recommend to the Cook County Board of Commissioners that the following revision of the Cook County Travel Reimbursement Policy be made.

**Current Language:**

The Transportation Expense Voucher shall be approved by the Department Head or a designated representative, who shall sign the original copy of the Transportation Expense Voucher. The original Voucher shall be sent to the Comptroller's Office by the 10th day of the following month in which the travel expense was incurred. Transportation Expense Vouchers submitted 60 days after the end of the month in which travel expense was incurred will not be reimbursed. A copy of the Transportation Expense Voucher shall be retained by the department and the employee.

**Proposed Revision:**

In order to be eligible for reimbursement, the employee must submit the Transportation Expense Voucher by no later than the 20th day of the month following the month in which the travel expense was incurred unless the failure to submit a voucher within the 20 day period is due to extraordinary circumstances. The Transportation Expense Voucher shall then be reviewed and approved by the Department Head or a designated representative, whose signature will represent his or her representation that he or she has reviewed the voucher and that the information contained on the voucher is complete and accurate. The Department must submit the Travel Expense Voucher to the Comptroller's Office by no later than the 60th day after the end of the month in which the travel expense was incurred. An employee who submits a voucher within the 20-day submission period, as described above, will not be denied reimbursement for failure of the Department to timely submit the voucher to the Comptroller's office. A copy of the Transportation Expense Voucher shall be retained by the department.

MEMORANDUM OF UNDERSTANDING

The parties agree to discuss the subject of creating a County operated health plan for County retirees.

FILED DATE: 3/22/2019 9:57 AM  2019CH03742

## MEMORANDUM OF UNDERSTANDING

The parties agree to draft a mutually acceptable letter to the County Employees' and Officers' Annuity and Benefit Fund of Cook County with regard to the temporary disability issue raised in AFSCME Economic Proposal Number 11 concerning temporary disability benefits.

## MEMORANDUM OF UNDERSTANDING

For the period from the date of the execution of this tentative agreement through November 30, 2017 only, if the County enters into an agreement with any other union for a non-interest arbitration eligible bargaining unit that contains across-the-board wage increases greater than those set forth in the parties' tentative agreement regarding general increases, or agrees to a lower rate of employee contribution to health insurance (either in employee contribution to premiums or through plan design changes that are more favorable to employees) for a non-interest arbitration eligible bargaining unit, then upon demand by the union, those wage increases or health insurance changes will be applied to the members of this bargaining unit.

## SIDE LETTER OF AGREEMENT

The Employers agree that they will not implement any shutdown days from the date of execution of this side letter through the termination of the collective bargaining agreement. This Agreement shall automatically expire upon Cook County Board of Commissioners' ratification of the successor agreement. This agreement is non-precedential and shall not be used by either party in any proceeding except to enforce its terms. Further, the parties agree that by executing this agreement neither the Union nor the Employers waive any positions, rights, claims or defenses regarding shutdown days.

## SIDE LETTER OF AGREEMENT

**Alternative Work Schedules:**

The parties understand the positive benefits that alternate work schedules have for employees. Therefore, the parties agree that no later than 90 days after ratification of this agreement, upon request of the Union, the parties shall meet to determine which position classifications may be eligible to participate in alternative work schedules and to resolve any procedural issues. If the Employer in its sole discretion determines its own needs may appropriately be met by allowing an employee the opportunity to have an alternative work schedule, the Employer may grant the request.

- 42 -

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

# APPENDIX A

## JOB CLASSIFICATIONS

Probation Officer I, II, III

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

# APPENDIX B

## PAY SCHEDULES

FILED DATE: 3/22/2019 9:57 AM  2019CH03742

**SCHEDULE XIII**
**BUREAU OF HUMAN RESOURCES**
**PROBATION SERVICES - AFSCME**

Effective June 1, 2013
DRAFT

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step (6th Step) | Year at 1st Longevity Rate & 10 Years Service (7th Step) | Year at 2nd Longevity Rate & 15 Years Service (8th Step) | Year at 3rd Longevity Rate & 20 Years Service (9th Step) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 22.466 | 23.421 | 24.417 | 25.454 | 26.536 | 27.664 | 28.840 | 30.152 | 31.523 | 32.233 |
| | Bi-Weekly | 1,797.28 | 1,873.68 | 1,953.36 | 2,036.32 | 2,122.88 | 2,213.12 | 2,307.20 | 2,412.16 | 2,521.84 | 2,578.64 |
| | Annual | 46,729 | 48,715 | 50,787 | 52,944 | 55,194 | 57,541 | 59,987 | 62,716 | 65,567 | 67,044 |
| PS2 | Hourly | 24.118 | 25.144 | 26.212 | 27.327 | 28.487 | 29.699 | 30.961 | 32.369 | 33.843 | 34.605 |
| | Bi-Weekly | 1,929.44 | 2,011.52 | 2,096.96 | 2,186.16 | 2,278.96 | 2,375.92 | 2,476.88 | 2,589.52 | 2,707.44 | 2,768.40 |
| | Annual | 50,165 | 52,299 | 54,520 | 56,840 | 59,252 | 61,773 | 64,398 | 67,327 | 70,393 | 71,978 |
| PSB | Hourly | 24.715 | 25.765 | 26.860 | 28.001 | 29.192 | 30.432 | 31.725 | 33.169 | 34.678 | 36.170 |
| | Bi-Weekly | 1,977.20 | 2,061.20 | 2,148.80 | 2,240.08 | 2,335.36 | 2,434.56 | 2,538.00 | 2,653.52 | 2,774.24 | 2,893.60 |
| | Annual | 51,407 | 53,591 | 55,868 | 58,242 | 60,719 | 63,298 | 65,988 | 68,991 | 72,130 | 75,233 |
| PSC | Hourly | 26.440 | 27.564 | 28.735 | 29.957 | 31.230 | 32.557 | 33.941 | 37.230 | 38.923 | 39.799 |
| | Bi-Weekly | 2,115.20 | 2,205.12 | 2,298.80 | 2,396.56 | 2,498.40 | 2,604.56 | 2,715.28 | 2,978.40 | 3,113.84 | 3,183.92 |
| | Annual | 54,995 | 57,333 | 59,768 | 62,310 | 64,958 | 67,718 | 70,597 | 77,438 | 80,959 | 82,781 |
| PS3 | Hourly | 27.741 | 28.918 | 30.147 | 31.429 | 32.765 | 34.157 | 35.610 | 37.230 | 38.923 | 40.598 |
| | Bi-Weekly | 2,219.28 | 2,313.44 | 2,411.76 | 2,514.32 | 2,621.20 | 2,732.56 | 2,848.80 | 2,978.40 | 3,113.84 | 3,247.84 |
| | Annual | 57,701 | 60,149 | 62,705 | 65,372 | 68,151 | 71,046 | 74,068 | 77,438 | 80,959 | 84,443 |



FILED DATE: 3/22/2019 9:57 AM   2019CH03742

**SCHEDULE XIII**
**BUREAU OF HUMAN RESOURCES**
**PROBATION SERVICES - AFSCME**

Effective June 1, 2014
DRAFT

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step (6th Step) | Year at 1st Longevity Rate & 10 Years Service (7th Step) | Year at 2nd Longevity Rate & 15 Years Service (8th Step) | Year at 3rd Longevity Rate & 20 Years Service (9th Step) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 22.803 | 23.772 | 24.783 | 25.836 | 26.934 | 28.079 | 29.273 | 30.604 | 31.996 | 32.716 |
| | Bi-Weekly | 1,824.24 | 1,901.76 | 1,982.64 | 2,066.88 | 2,154.72 | 2,246.32 | 2,341.84 | 2,448.32 | 2,559.68 | 2,617.28 |
| | Annual | 47,430 | 49,445 | 51,548 | 53,738 | 56,022 | 58,404 | 60,887 | 63,656 | 66,551 | 68,049 |
| PS2 | Hourly | 24.480 | 25.521 | 26.605 | 27.737 | 28.914 | 30.144 | 31.425 | 32.855 | 34.351 | 35.124 |
| | Bi-Weekly | 1,958.40 | 2,041.68 | 2,128.40 | 2,218.96 | 2,313.12 | 2,411.52 | 2,514.00 | 2,628.40 | 2,748.08 | 2,809.92 |
| | Annual | 50,918 | 53,083 | 55,338 | 57,692 | 60,141 | 62,699 | 65,364 | 68,338 | 71,450 | 73,057 |
| PSB | Hourly | 25.086 | 26.151 | 27.263 | 28.421 | 29.630 | 30.888 | 32.201 | 33.667 | 35.198 | 36.713 |
| | Bi-Weekly | 2,006.88 | 2,092.08 | 2,181.04 | 2,273.68 | 2,370.40 | 2,471.04 | 2,576.08 | 2,693.36 | 2,815.84 | 2,937.04 |
| | Annual | 52,178 | 54,394 | 56,707 | 59,115 | 61,630 | 64,247 | 66,978 | 70,027 | 73,211 | 76,363 |
| PSC | Hourly | 26.837 | 27.977 | 29.166 | 30.406 | 31.698 | 33.045 | 34.450 | 37.788 | 39.507 | 40.396 |
| | Bi-Weekly | 2,146.96 | 2,238.16 | 2,333.28 | 2,432.48 | 2,535.84 | 2,643.60 | 2,756.00 | 3,023.04 | 3,160.56 | 3,231.68 |
| | Annual | 55,820 | 58,192 | 60,665 | 63,244 | 65,931 | 68,733 | 71,656 | 78,599 | 82,174 | 84,023 |
| PS3 | Hourly | 28.157 | 29.352 | 30.599 | 31.900 | 33.256 | 34.669 | 36.144 | 37.788 | 39.507 | 41.207 |
| | Bi-Weekly | 2,252.56 | 2,348.16 | 2,447.92 | 2,552.00 | 2,660.48 | 2,773.52 | 2,891.52 | 3,023.04 | 3,160.56 | 3,296.56 |
| | Annual | 58,566 | 61,052 | 63,645 | 66,352 | 69,172 | 72,111 | 75,179 | 78,599 | 82,174 | 85,710 |



FILED DATE: 3/22/2019 9:57 AM   2019CH03742

SCHEDULE XIII
BUREAU OF HUMAN RESOURCES
PROBATION SERVICES - AFSCME

Effective June 1, 2015
DRAFT

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step / 6th Step | Year at 1st Longevity Rate & 10 Years Service / 7th Step | Year at 2nd Longevity Rate & 15 Years Service / 8th Step | Year at 3rd Longevity Rate & 20 Years Service / 9th Step |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 23.259 | 24.247 | 25.279 | 26.353 | 27.473 | 28.641 | 29.858 | 31.216 | 32.636 | 33.370 |
| | Bi-Weekly | 1,860.72 | 1,939.76 | 2,022.32 | 2,108.24 | 2,197.84 | 2,291.28 | 2,388.64 | 2,497.28 | 2,610.88 | 2,669.60 |
| | Annual | 48,378 | 50,433 | 52,580 | 54,814 | 57,143 | 59,573 | 62,104 | 64,929 | 67,882 | 69,409 |
| PS2 | Hourly | 24.970 | 26.031 | 27.137 | 28.292 | 29.492 | 30.747 | 32.054 | 33.512 | 35.038 | 35.826 |
| | Bi-Weekly | 1,997.60 | 2,082.48 | 2,170.96 | 2,263.36 | 2,359.36 | 2,459.76 | 2,564.32 | 2,680.96 | 2,803.04 | 2,866.08 |
| | Annual | 51,937 | 54,144 | 56,444 | 58,847 | 61,343 | 63,953 | 66,672 | 69,704 | 72,879 | 74,518 |
| PSB | Hourly | 25.588 | 26.674 | 27.808 | 28.989 | 30.223 | 31.506 | 32.845 | 34.340 | 35.902 | 37.447 |
| | Bi-Weekly | 2,047.04 | 2,133.92 | 2,224.64 | 2,319.12 | 2,417.84 | 2,520.48 | 2,627.60 | 2,747.20 | 2,872.16 | 2,995.76 |
| | Annual | 53,223 | 55,481 | 57,840 | 60,297 | 62,863 | 65,532 | 68,317 | 71,427 | 74,676 | 77,889 |
| PSC | Hourly | 27.374 | 28.537 | 29.749 | 31.014 | 32.332 | 33.706 | 35.139 | 38.544 | 40.297 | 41.204 |
| | Bi-Weekly | 2,189.92 | 2,282.96 | 2,379.92 | 2,481.12 | 2,586.56 | 2,696.48 | 2,811.12 | 3,083.52 | 3,223.76 | 3,296.32 |
| | Annual | 56,937 | 59,356 | 61,877 | 64,509 | 67,250 | 70,108 | 73,089 | 80,171 | 83,817 | 85,704 |
| PS3 | Hourly | 28.720 | 29.939 | 31.211 | 32.538 | 33.921 | 35.362 | 36.867 | 38.544 | 40.297 | 42.031 |
| | Bi-Weekly | 2,297.60 | 2,395.12 | 2,496.88 | 2,603.04 | 2,713.68 | 2,828.96 | 2,949.36 | 3,083.52 | 3,223.76 | 3,362.48 |
| | Annual | 59,737 | 62,273 | 64,918 | 67,679 | 70,555 | 73,552 | 76,683 | 80,171 | 83,817 | 87,424 |



FILED DATE: 3/22/2019 9:57 AM  2019CH03742

**Effective December 1, 2015**
**DRAFT**

**SCHEDULE XIII**
**BUREAU OF HUMAN RESOURCES**
**PROBATION SERVICES - AFSCME**

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step 6th Step | Year at 1st Longevity Rate & 10 Years Service 7th Step | Year at 2nd Longevity Rate & 15 Years Service 8th Step | Year at 3rd Longevity Rate & 20 Years Service 9th Step |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 23.724 | 24.732 | 25.785 | 26.880 | 28.022 | 29.214 | 30.455 | 31.840 | 33.289 | 34.037 |
| | Bi-Weekly | 1,897.92 | 1,978.56 | 2,062.80 | 2,150.40 | 2,241.76 | 2,337.12 | 2,436.40 | 2,547.20 | 2,663.12 | 2,722.96 |
| | Annual | 49,345 | 51,442 | 53,632 | 55,910 | 58,285 | 60,766 | 63,346 | 66,227 | 69,241 | 70,796 |
| PS2 | Hourly | 25.469 | 26.552 | 27.680 | 28.858 | 30.082 | 31.362 | 32.695 | 34.182 | 35.739 | 36.543 |
| | Bi-Weekly | 2,037.52 | 2,124.16 | 2,214.40 | 2,308.64 | 2,406.56 | 2,508.96 | 2,615.60 | 2,734.56 | 2,859.12 | 2,923.44 |
| | Annual | 52,975 | 55,228 | 57,574 | 60,024 | 62,570 | 65,232 | 68,005 | 71,098 | 74,337 | 76,009 |
| PSB | Hourly | 26.100 | 27.207 | 28.364 | 29.569 | 30.827 | 32.136 | 33.502 | 35.027 | 36.620 | 38.196 |
| | Bi-Weekly | 2,088.00 | 2,176.56 | 2,269.12 | 2,365.52 | 2,466.16 | 2,570.88 | 2,680.16 | 2,802.16 | 2,929.60 | 3,055.68 |
| | Annual | 54,288 | 56,590 | 58,997 | 61,503 | 64,120 | 66,842 | 69,684 | 72,856 | 76,169 | 79,447 |
| PSC | Hourly | 27.921 | 29.108 | 30.344 | 31.634 | 32.979 | 34.380 | 35.842 | 39.315 | 41.103 | 42.028 |
| | Bi-Weekly | 2,233.68 | 2,328.64 | 2,427.52 | 2,530.72 | 2,638.32 | 2,750.40 | 2,867.36 | 3,145.20 | 3,288.24 | 3,362.24 |
| | Annual | 58,075 | 60,544 | 63,115 | 65,798 | 68,596 | 71,510 | 74,551 | 81,775 | 85,494 | 87,418 |
| PS3 | Hourly | 29.294 | 30.538 | 31.835 | 33.189 | 34.599 | 36.069 | 37.604 | 39.315 | 41.103 | 42.872 |
| | Bi-Weekly | 2,343.52 | 2,443.04 | 2,546.80 | 2,655.12 | 2,767.92 | 2,885.52 | 3,008.32 | 3,145.20 | 3,288.24 | 3,429.76 |
| | Annual | 60,931 | 63,519 | 66,216 | 69,033 | 71,965 | 75,023 | 78,216 | 81,775 | 85,494 | 89,173 |



FILED DATE: 3/22/2019 9:57 AM 2019CH03742

December 1, 2015
Effective ~~February 1, 2016~~
DRAFT

## SCHEDULE XIII
## BUREAU OF HUMAN RESOURCES
## PROBATION SERVICES - AFSCME

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step — 6th Step | Year at 1st Longevity Rate & 10 Years Service — 7th Step | Year at 2nd Longevity Rate & 15 Years Service — 8th Step | Year at 3rd Longevity Rate & 20 Years Service — 9th Step |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 23.724 | 24.732 | 25.785 | 26.880 | 28.022 | 29.214 | 30.455 | 31.840 | 33.455 | 34.207 |
| | Bi-Weekly | 1,897.92 | 1,978.56 | 2,062.80 | 2,150.40 | 2,241.76 | 2,337.12 | 2,436.40 | 2,547.20 | 2,676.40 | 2,736.56 |
| | Annual | 49,345 | 51,442 | 53,632 | 55,910 | 58,285 | 60,765 | 63,346 | 66,227 | 69,586 | 71,150 |
| PS2 | Hourly | 25.469 | 26.552 | 27.680 | 28.858 | 30.082 | 31.362 | 32.695 | 34.182 | 35.918 | 36.726 |
| | Bi-Weekly | 2,037.52 | 2,124.16 | 2,214.40 | 2,308.64 | 2,406.56 | 2,508.96 | 2,615.60 | 2,734.56 | 2,873.44 | 2,938.08 |
| | Annual | 52,975 | 55,228 | 57,574 | 60,024 | 62,570 | 65,232 | 68,005 | 71,098 | 74,709 | 76,390 |
| PSB | Hourly | 26.100 | 27.207 | 28.364 | 29.569 | 30.827 | 32.136 | 33.502 | 35.027 | 36.803 | 38.387 |
| | Bi-Weekly | 2,088.00 | 2,176.56 | 2,269.12 | 2,365.52 | 2,466.16 | 2,570.88 | 2,680.16 | 2,802.16 | 2,944.24 | 3,070.96 |
| | Annual | 54,288 | 56,590 | 58,997 | 61,503 | 64,120 | 66,842 | 69,684 | 72,856 | 76,550 | 79,844 |
| PSC | Hourly | 27.921 | 29.108 | 30.344 | 31.634 | 32.979 | 34.380 | 35.842 | 39.315 | 41.309 | 42.238 |
| | Bi-Weekly | 2,233.68 | 2,328.64 | 2,427.52 | 2,530.72 | 2,638.32 | 2,750.40 | 2,867.36 | 3,145.20 | 3,304.72 | 3,379.04 |
| | Annual | 58,075 | 60,544 | 63,115 | 65,798 | 68,596 | 71,510 | 74,551 | 81,775 | 85,922 | 87,855 |
| PS3 | Hourly | 29.294 | 30.538 | 31.835 | 33.189 | 34.599 | 36.069 | 37.604 | 39.315 | 41.309 | 43.086 |
| | Bi-Weekly | 2,343.52 | 2,443.04 | 2,546.80 | 2,655.12 | 2,767.92 | 2,885.52 | 3,008.32 | 3,145.20 | 3,304.72 | 3,446.88 |
| | Annual | 60,931 | 63,519 | 66,216 | 69,033 | 71,965 | 75,023 | 78,216 | 81,775 | 85,922 | 89,618 |



Effective December 1, 2016
DRAFT

SCHEDULE XIII
BUREAU OF HUMAN RESOURCES
PROBATION SERVICES - AFSCME

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step (6th Step) | Year at 1st Longevity Rate & 10 Years Service (7th Step) | Year at 2nd Longevity Rate & 15 Years Service (8th Step) | Year at 3rd Longevity Rate & 20 Years Service (9th Step) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 24.258 | 25.288 | 26.365 | 27.485 | 28.652 | 29.871 | 31.140 | 32.556 | 34.208 | 34.977 |
| | Bi-Weekly | 1,940.64 | 2,023.04 | 2,109.20 | 2,198.80 | 2,292.16 | 2,389.68 | 2,491.20 | 2,604.48 | 2,736.64 | 2,798.16 |
| | Annual | 50,456 | 52,599 | 54,839 | 57,168 | 59,596 | 62,131 | 64,771 | 67,716 | 71,152 | 72,752 |
| PS2 | Hourly | 26.042 | 27.149 | 28.303 | 29.507 | 30.759 | 32.068 | 33.431 | 34.951 | 36.726 | 37.552 |
| | Bi-Weekly | 2,083.36 | 2,171.92 | 2,264.24 | 2,360.56 | 2,460.72 | 2,565.44 | 2,674.48 | 2,796.08 | 2,938.08 | 3,004.16 |
| | Annual | 54,167 | 56,469 | 58,870 | 61,374 | 63,978 | 66,701 | 69,536 | 72,698 | 76,390 | 78,108 |
| PSB | Hourly | 26.687 | 27.819 | 29.002 | 30.234 | 31.521 | 32.859 | 34.256 | 35.815 | 37.631 | 39.251 |
| | Bi-Weekly | 2,134.96 | 2,225.52 | 2,320.16 | 2,418.72 | 2,521.68 | 2,628.72 | 2,740.48 | 2,865.20 | 3,010.48 | 3,140.08 |
| | Annual | 55,508 | 57,863 | 60,324 | 62,886 | 65,563 | 68,346 | 71,252 | 74,495 | 78,272 | 81,642 |
| PSC | Hourly | 28.549 | 29.763 | 31.027 | 32.346 | 33.721 | 35.154 | 36.648 | 40.200 | 42.238 | 43.188 |
| | Bi-Weekly | 2,283.92 | 2,381.04 | 2,482.16 | 2,587.68 | 2,697.68 | 2,812.32 | 2,931.84 | 3,216.00 | 3,379.04 | 3,455.04 |
| | Annual | 59,381 | 61,907 | 64,536 | 67,279 | 70,139 | 73,120 | 76,227 | 83,616 | 87,855 | 89,831 |
| PS3 | Hourly | 29.953 | 31.225 | 32.551 | 33.936 | 35.377 | 36.881 | 38.450 | 40.200 | 42.238 | 44.055 |
| | Bi-Weekly | 2,396.24 | 2,498.00 | 2,604.08 | 2,714.88 | 2,830.16 | 2,950.48 | 3,076.00 | 3,216.00 | 3,379.04 | 3,524.40 |
| | Annual | 62,302 | 64,948 | 67,706 | 70,586 | 73,584 | 76,712 | 79,976 | 83,616 | 87,855 | 91,634 |

FILED DATE: 3/22/2019 9:57 AM    2019CH03742



FILED DATE: 3/22/2019 9:57 AM   2019CH03742

Effective June 1, 2017
DRAFT

**SCHEDULE XIII**
**BUREAU OF HUMAN RESOURCES**
**PROBATION SERVICES - AFSCME**

| Grade | | Entry Rate | 1st Step | 2nd Step | 3rd Step | 4th Step | 5th Step | After 2 Years At 5th Step 6th Step | Year at 1st Longevity Rate & 10 Years Service 7th Step | Year at 2nd Longevity Rate & 15 Years Service 8th Step | Year at 3rd Longevity Rate & 20 Years Service 9th Step |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PS1 | Hourly | 24.743 | 25.794 | 26.892 | 28.035 | 29.225 | 30.468 | 31.763 | 33.207 | 34.892 | 35.677 |
| | Bi-Weekly | 1,979.44 | 2,063.52 | 2,151.36 | 2,242.80 | 2,338.00 | 2,437.44 | 2,541.04 | 2,656.56 | 2,791.36 | 2,854.16 |
| | Annual | 51,465 | 53,651 | 55,935 | 58,312 | 60,788 | 63,373 | 66,067 | 69,070 | 72,575 | 74,208 |
| PS2 | Hourly | 26.563 | 27.692 | 28.869 | 30.097 | 31.374 | 32.709 | 34.100 | 35.650 | 37.461 | 38.303 |
| | Bi-Weekly | 2,125.04 | 2,215.36 | 2,309.52 | 2,407.76 | 2,509.92 | 2,616.72 | 2,728.00 | 2,852.00 | 2,996.88 | 3,064.24 |
| | Annual | 55,251 | 57,599 | 60,047 | 62,601 | 65,257 | 68,034 | 70,928 | 74,152. | 77,918 | 79,670 |
| PSB | Hourly | 27.221 | 28.375 | 29.582 | 30.839 | 32.151 | 33.516 | 34.941 | 36.531 | 38.384 | 40.036 |
| | Bi-Weekly | 2,177.68 | 2,270.00 | 2,366.56 | 2,467.12 | 2,572.08 | 2,681.28 | 2,795.28 | 2,922.48 | 3,070.72 | 3,202.88 |
| | Annual | 56,619 | 59,020 | 61,530 | 64,145 | 66,874 | 69,713 | 72,677 | 75,984 | 79,838 | 83,274 |
| PSC | Hourly | 29.120 | 30.358 | 31.648 | 32.993 | 34.395 | 35.857 | 37.381 | 41.004 | 43.083 | 44.052 |
| | Bi-Weekly | 2,329.60 | 2,428.64 | 2,531.84 | 2,639.44 | 2,751.60 | 2,868.56 | 2,990.48 | 3,280.32 | 3,446.64 | 3,524.16 |
| | Annual | 60,569 | 63,144 | 65,827 | 68,625 | 71,541 | 74,582 | 77,752 | 85,288 | 89,612 | 91,628 |
| PS3 | Hourly | 30.552 | 31.850 | 33.202 | 34.615 | 36.085 | 37.619 | 39.219 | 41.004 | 43.083 | 44.936 |
| | Bi-Weekly | 2,444.16 | 2,548.00 | 2,656.16 | 2,769.20 | 2,886.80 | 3,009.52 | 3,137.52 | 3,280.32 | 3,446.64 | 3,594.88 |
| | Annual | 63,548 | 66,248 | 69,060 | 71,999 | 75,056 | 78,247 | 81,575 | 85,288 | 89,612 | 93,466 |



FILED DATE: 3/22/2019 9:57 AM   2019CH03742

# APPENDIX C

## INSURANCE

Cook County Benefit Overview

| HMO(s) | Benefits Effective until 11/30/2015 | Benefits Effective 12/1/2015 |
|---|---|---|
| Classic Blue Option | In Effect | Eliminated |
| Out of Pocket Maximum | Drug Copays do not accumulate to OOP Max | All Copays accumulate to OOP Max |
| Out of Pocket Maximum | $1,500 single / $3,000 family | $1,600 single / $3,200 family |
| Inpatient Facility | $100 copay per admit | $100 copay per admit |
| Preventive | $10 copay | $0 copay (100% Covered) |
| Other PCP / Urgent Care | $10 copay | $15 copay |
| Specialists | $10 copay | $20 copay |
| X-Ray / Diagnostic tests (performed in lab or hospital) | $0 copay | $0 copay |
| Accident / illness | $10 copay | $15 copay |
| Emergency Room | $40 copay | $75 copay |

| PPO | Benefits Effective until 11/30/2015 | Benefits Effective 12/1/2015 |
|---|---|---|
| Deductible and Out of Pocket Maximum | Copay and Deductibles do not accumulate to OOP Max | Copay and Deductibles do accumulate to OOP Max |
| Annual Deductible | $125 / $250 (Single / Family) 2x Out of Network | $350 / $700 (Single / Family) 2x Out of Network |
| Out of Pocket Maximum | $1,500/$3,000 (Single / Family) 2x Out of Network | $1,600/$3,200 (Single / Family) 2x Out of Network |
| Inpatient Facility | 90% In network / 60% Out of network | 90% In network / 60% Out of network |
| Preventive | 90% coinsurance after $25 copay / 60% Out of network | $0 copay (100% Covered) |

| | | |
|---|---|---|
| PCP | 90% coinsurance after $25 copay / 60% Out of network | 90% coinsurance after $25 copay / 60% Out of network |
| Specialists | 90% coinsurance after $25 copay / 60% Out of network | 90% coinsurance after $35 copay / 60% Out of |

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

| | | network |
|---|---|---|
| X-Ray / Diagnostic tests (performed in lab or hospital) | 90% In network 60% Out of network | 90% In network 60% Out of network |
| Accident / Illness | 90% coinsurance after $25 copay / 60% Out of network | 90% coinsurance after $25 copay / 60% Out of network |
| Emergency Room – In / Out of Network | $40 copay | $75 copay |

## Cook County Benefit Overview (Cont.)

| Drug | Benefits Effective until 11/30/2015 | Benefits Effective 12/1/2015 |
|---|---|---|
| Prescription Drugs – Retail | Generic: $7 copay Brand Formulary: $15 copay Brand Non-Formulary: $25 copay Mail Order: 2 x retail | Generic: $10 copay Brand Formulary: $25 copay Brand Non-Formulary: $40 copay Mail Order: 2 x retail |
| Generic Step Therapy | N/A | PBM's generic step therapy program |
| Mandatory Maintenance Choice | N/A | Mandatory mail-order for maintenance drugs |

| Vision | Benefits Effective until 11/30/2015 | Benefits Effective 12/1/2015 |
|---|---|---|
| Eye Examination | $0 copay Once per 12 months | $0 copay Once per 12 months |
| Eyeglass Lenses* | $0 copay standard uncoated plastic Once per 12 months | $0 copay standard uncoated plastic Once per 12 months |
| Frames | $0 copay up to $100 / Amount over $100 less 10% Once per 24 months | $0 copay up to $100 / Amount over $100 less 10% Once per 24 months |
| Contact Lenses* | $0 copay up to $100 Once per 12 months | $0 copay up to $100 Once per 12 months |

*Either eyeglass lenses OR contact lenses are covered every 12 months*

FILED DATE: 3/22/2019 9:57 AM    2019CH03742

Cook County Benefit Overview (Cont.)

| Dental – HMO | Benefits Effective until 11/30/2015 | Benefits Effective 12/1/2015 |
|---|---|---|
| *Annual Deductible* | $0 (None) | $0 (None) |
| *Benefit Period Maximum* | None | None |
| *Preventive* | 100% of Maximum Allowance Includes 2 exams / cleanings per benefit period; Includes fluoride treatments under age 19 | Requires a Maximum Allowance Includes 2 exams / cleanings per benefit period; Includes fluoride treatments under age 19 |
| *Basic Benefits* | Requires a copayment for each specific service; Copayments equal a discount of approximately 70% | Requires a copayment for each specific service; Copayments equal a discount of approximately 70% |
| *Major Services* | Requires a copayment for each specific service; Copayments equal a discount of approximately 60% | Requires a copayment for each specific service; Copayments equal a discount of approximately 60% |
| *Orthodontics* | Requires copayments; Copayments equal a discount of approximately 25%; Max one full course of treatment for dependent children under 19 | Requires copayments; Copayments equal a discount of approximately 25%; Max one full course of treatment for dependent children under 19 |

| Dental – PPO | Benefits Effective until 11/30/2015 | Benefits Effective 12/1/2015 |
|---|---|---|
| Annual Deductible | $25 Individual / $100 Family (In network) $50 Individual / $200 Family (Out of network) | $25 Individual / $100 Family (In network) $50 Individual / $200 Family (Out of network) |

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

| | | |
|---|---|---|
| Preventive (2 exams / cleanings per Benefit Period) | 100% of Maximum Allowance (In network) 80% of Maximum Allowance (Out of network) | 100% of Maximum Allowance (In network) 80% of Maximum Allowance (Out of network) |
| Primary Services X-Rays Space Maintainers | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) |
| Restorative Services Routine Fillings | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) |
| Emergency Services | 80% of Maximum Allowance (In network) 80% of Maximum Allowance (Out of network) | 80% of Maximum Allowance (In network) 80% of Maximum Allowance (Out of network) |
| Endodontics | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) |
| Periodontics | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) |
| Oral Surgery | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) | 80% of Maximum Allowance (In network) 60% of Maximum Allowance (Out of network) |
| Prosthetics | 50% of Maximum Allowance (In and out | 50% of Maximum Allowance (In and out |

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

| | of network) | of network) |
|---|---|---|
| *Orthodontics* | 50% up to a lifetime max of $1,250 (In and out of network) | 50% up to a lifetime max of $1,250 (In and out of network) |

## Cook County Benefit Overview (Cont.)
### Employee Contributions – As a Percentage of Salary (Pre-Tax)

| Blue Advantage HMO | Effective until 11/30/2015 | Effective 12/1/2015 | Effective 12/1/2016 |
|---|---|---|---|
| Employee Only | 0.50% | 1.00% | 1.50% |
| Employee + Spouse | 1.00% | 1.50% | 2.00% |
| Employee + Child(ren) | 0.75% | 1.25% | 1.75% |
| Employee + Family | 1.25% | 1.75% | 2.25% |

| PPO | Effective until 11/30/2015 | Effective 12/1/2015 | Effective 12/1/2016 |
|---|---|---|---|
| Employee Only | 1.50% | 2.00% | 2.50% |
| Employee + Spouse | 2.00% | 2.50% | 3.00% |
| Employee + Child(ren) | 1.75% | 2.25% | 2.75% |
| Employee + Family | 2.25% | 2.75% | 3.25% |

| Dental | Effective until 11/30/2015 | Effective 12/1/2015 | Effective 12/1/2016 |
|---|---|---|---|
| HMO | $0 | $0 | $0 |
| PPO | $0 | $0 | $0 |

| Vision | Effective until 11/30/2015 | Effective 12/1/2015 | Effective 12/1/2016 |
|---|---|---|---|
| Vision Plan | $0 | $0 | $0 |

- 49 -

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

-------- Original message --------
From: "Lloyd Marshall Jr. (Juvenile Probation)" <lloyd.marshalljr@cookcountyil.gov>
Date: 10/4/18 2:50 PM (GMT-06:00)
To: "Carina Segalini (Chief Judge's Office)" <carina.segalini@cookcountyil.gov>
Cc: "Katherine Verrant (Chief Judge's Office)" <Katherine.Verrant@cookcountyil.gov>, "Avik Das (Juvenile Probation)" <avik.das@cookcountyil.gov>, "William Patterson (Juvenile Probation)" <william.patterson@cookcountyil.gov>, "Donna Neal (Juvenile Probation)" <donna.neal@cookcountyil.gov>, "Jennifer Nunez (Juvenile Probation)" <jennifer.nunez@cookcountyil.gov>, Eugene Boatright <EBoatright@afscme31.org>, "Steven Kasperski (Juvenile Probation)" <steven.kasperski@cookcountyil.gov>
Subject: Jason Smith's Grievance

Please be advised that I am forwarding this case to Council 31 to begin the arbitration process.

Lloyd Marshall, President AFSCME Local 3477

1



FILED DATE: 3/22/2019 9:57 AM   2019CH03742

**From:** Marci Bailey <MBailey@afscme31.org>
**Sent:** Friday, October 5, 2018 1:48 PM
**To:** Keith Sevcik (Chief Judge's Office) <keith.sevcik@cookcountyil.gov>
**Cc:** Katherine Verrant (Chief Judge's Office) <Katherine.Verrant@cookcountyil.gov>; tedstrom@afscme31.org
**Subject:** Jason Smith - Discharge; AFSCME No. 2018-10-45937; AFSCME Local 3477 and Cook County Juvenile Probation

Good afternoon Keith:

Please be advised that we are in receipt of the above-referenced grievance.  As Benn is next in rotation on the panel, let me know if the Employer is in agreement with this choice.

Thank you.


Marci Bailey
AFSCME Council 31
(312) 641-6060

3


EXHIBIT
3

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

**From:** Katherine Verrant (Chief Judge's Office) <Katherine.Verrant@cookcountyil.gov>
**Sent:** Tuesday, October 09, 2018 10:23 AM
**To:** Marci Bailey <MBailey@afscme31.org>; Keith Sevcik (Chief Judge's Office) <keith.sevcik@cookcountyil.gov>; Laura Kelly (Chief Judge's Office) <Laura.Kelly@cookcountyil.gov>
**Cc:** Tom Edstrom <TEdstrom@afscme31.org>
**Subject:** RE: Jason Smith - Discharge; AFSCME No. 2018-10-45937; AFSCME Local 3477 and Cook County Juvenile Probation

Good morning Marci,

The employer objects to arbitrating this grievance, as we believe Mr. Smith was not a member of Local 3477 on June 8, 2018 (the date he was terminated), and that he was, in fact, in a different AFSCME local at that time, which is not covered by these parties' Collective Bargaining Agreement.  In order to move forward, the employer is asking that Council 31 provide documentation that Mr. Smith was a member of Local 3477 on the date of his termination, including his registration with Local 3477 and any registration documentation for his membership in the AFSCME Local representing COPA staff.  If you would like to discuss this further, I can be available to talk later this week.

Thank you,

2



EXHIBIT
4

FILED DATE: 3/22/2019 9:57 AM   2019CH03742

**From:** Katherine Verrant (Chief Judge's Office) <Katherine.Verrant@cookcountyil.gov>
**Sent:** Monday, November 26, 2018 12:07 PM
**To:** Marci Bailey <MBailey@afscme31.org>
**Cc:** Keith Sevcik (Chief Judge's Office) <keith.sevcik@cookcountyil.gov>; Laura Kelly (Chief Judge's Office) <Laura.Kelly@cookcountyil.gov>; Tom Edstrom <TEdstrom@afscme31.org>
**Subject:** RE: Jason Smith - Discharge; AFSCME No. 2018-10-45937; AFSCME Local 3477 and Cook County Juvenile Probation

Good afternoon,

This email serves as a follow-up to Mr. Edstrom's phone call to me this morning. In order for the Office of the Chief Judge to determine our position with respect to the arbitrability of Jason Smith's grievance, we are asking that Council 31 provide copies of Mr. Smith's membership files and/or relevant documentation for both AFSCME Local 3477 and the AFSCME Local that represents COPA employees. Once we receive this information, we will be prepared to discuss next steps.

Thank you,
Kate



EXHIBIT
5